Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed and Memorandum Opinion filed March 31, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00541-CR

_______________

 

KYLE CARPENTER DIETRICH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1072796 

                                                                                                                                                

 

M E M O R A N D U M   O P I N I O N

Appellant
Kyle Carpenter Dietrich was convicted of aggravated sexual assault of a child
and sentenced to thirty-three years= confinement in the Texas Department
of Criminal Justice, Institutional Division.  On appeal, he contends he was
denied (a) the effective assistance of counsel and (b) a fair and impartial
jury.  He further asserts that a conflict of interest with his attorneys
rendered his counsel ineffective and that the State did not prove venue by a
preponderance of the evidence.  We affirm.








I.  Factual and Procedural Background

Appellant
has not challenged the sufficiency of the evidence; we therefore discuss the
facts only briefly here and throughout the opinion as necessary to address his
appellate issues.

Sheila,[1]
appellant=s stepdaughter, testified regarding several incidents in which appellant
sexually assaulted her.  These sexual assaults occurred when Sheila was between
thirteen to seventeen years old.  She explained that her mother, Linda, married
appellant when she was twelve years old, and appellant moved into their home in
South Houston.  Sheila specifically described an occasion that she recalled
occurred in early May 2000, when she was thirteen, where appellant forced her
to perform oral sex on him in his truck.[2] 
She also detailed several other sexual assaults that occurred in her South
Houston home.  She testified that appellant sexually assaulted her repeatedly
some weeks, but at other times, months passed without an assault.  








When she
was around fifteen years old, Sheila explained that she left her mother Linda=s house in South Houston and moved in
with her biological father.  While Sheila was living with her father, appellant
suffered a serious head injury that left him comatose; when he recovered from
the coma, he had to relearn numerous basic human functions in the hospital
before he returned to her mother=s home.  Appellant and Linda also
received a financial settlement due to his injury.  Sheila stated that she
decided to move back to the home in South Houston because she thought appellant
was no longer a threat to her after his head injury.  According to Sheila,
appellant sexually assaulted her once more after he had been injured.  She
testified that, when she was eighteen, she married the individual her mother
and appellant had hired to manage their personal-injury settlement funds, and
she moved out of the house.  After she married and moved away, her mother and appellant
separated. 

Sheila
explained that she told her mother Linda about the sexual assaults when Linda
told her she was considering reconciling with appellant.  According to Sheila,
her mother did not believe her and called her a Aslut@ and a Aliar.@  Soon after telling Linda about the
abuse, Sheila reported her allegations to the authorities, who investigated her
claims and arrested appellant.

After
the State rested its case-in-chief, Linda testified in defense of appellant. 
She stated that she had never seen any inappropriate behavior between appellant
and Sheila.  Linda  stated that she and appellant had been in Las Vegas for
several days celebrating their anniversary from around April 30 to May 4,
2000.  She agreed that it would have been impossible for appellant to have been
around Sheila on those dates.  According to Linda, she and Sheila had a good relationship
when the sexual assaults occurred, but Sheila never told her about any
problems.  Linda explained that she never noticed anything in Sheila=s demeanor that would indicate she
had any problems with appellant.  Linda stated that she believed Sheila was not
a truthful person.  








Linda
testified regarding the personal-injury settlement she and appellant had
received after his head injury.  Linda testified that she and appellant spent
the money in about two-and-a-half years.  She explained that they used it on an
unsuccessful business venture, paying their home mortgage, and feeding and
clothing her children.  She testified she had been Ain charge of@ the money and had asked her
financial advisor (Sheila=s current husband) to transfer part of the money into an
account in her name only.  She stated that, after she and appellant separated,
he moved in with another woman.  Linda testified that she did not want
appellant to have access to the money after they separated.  Linda acknowledged
that she was currently taking prescription medications for pain.  She also
stated that she and Sheila were no longer speaking to each other.

After
both sides rested and closed, the jury found appellant guilty and sentenced him
to thirty-three years= confinement in the Texas Department of Criminal Justice,
Institutional Division.  The trial court rendered judgment on the jury=s verdict.  

Appellant
timely filed a motion for new trial, in which he alleged that (1) the evidence
was insufficient to establish venue in Harris County; (2) his trial counsel
entered into an agreement with Linda that created Aa legal and actual conflict of
interest which prevented the defendant=s attorneys from zealously
representing him@; and (3) appellant=s trial counsel was ineffective Ain that certain evidence and persons
were not called as witnesses on defendant=s behalf which would have caused a
not guilty verdict had such witnesses and the material evidence been presented.@  

The
trial court heard appellant=s motion for new trial in late August and early September
2007.  During the hearing, appellant=s trial counsel, John Morgan and
Charles David Thompson, testified regarding the strategy behind their defense
of appellant.  They both explained their decision to rely on Linda=s testimony by emphasizing their
belief in the importance of a mother testifying that she did not believe her
daughter about an alleged sexual assault.  They stated that Linda was a better
witness than appellant=s girlfriend because she had been living in the same
household with appellant and Sheila when the assaults occurred; thus, they
chose to rely on Linda rather than appellant=s girlfriend.  Thompson explained
their failure to call several witnesses regarding appellant=s character during the
guilt-innocence phase because doing so would have opened the door to appellant=s conviction for solicitation of
prostitution.  He also stated that they did not call several of these witnesses
during punishment because they would all be subject to cross-examination
regarding appellant=s past drug and alcohol problems.  








Several
witnesses testified regarding their belief that appellant was of good character
and had a good reputation for Asafe and moral relations@ with children.  Appellant testified
that Sheila made up the accusations against him.  He believed Linda was a poor
witness, was under the influence of drugs during her testimony, and had a
motive to influence Sheila to fabricate these allegations against him because
she was trying to prevent him from discovering what had happened to the funds
from the personal-injury settlement.

After
hearing the testimony, the trial court denied appellant=s motion for new trial, stating that
the second prong of Strickland had not been met, i.e., that
appellant had not established a reasonable probability existed that the
proceedings would have been different if his counsel had not been deficient. 
The trial judge further explained, AI think there were multiple
strategies.  I think one was taken, and while it wasn=t the only strategy, and, in
hindsight, their issues may have been more valuable - - not that I=ve seen that, but that they may be -
- I=m going to find and deny the motion
for new trial.@  This appeal timely ensued.

II.  Issues Presented

In his
first issue, appellant contends his trial counsel was ineffective in violation
of the United States and Texas constitutions.  Second, appellant asserts he was
denied a fair and impartial jury in violation of the United States and Texas
constitutions.  In his third issue, appellant argues that a conflict of
interest with his trial counsel deprived him of his right to the effective
assistance of counsel under both constitutions.  Finally, appellant complains
that the State failed to prove venue by a preponderance of the evidence.  

III.  Analysis

A.        Ineffective Assistance of
Counsel

Because
appellant=s first and third issues concern the effectiveness of his trial counsel,
we consolidate these issues and discuss them first.  








1.         Standard of Review

We review claims of ineffective assistance of counsel under
the standard set forth in Strickland v. Washington.  466 U.S. 668
(1984).  Under the Strickland test, an appellant must prove (1) his
trial counsel=s representation was deficient, and (2) the deficient
performance was so serious that it deprived the appellant of a fair trial.  Id.
at 687.  To establish both prongs, the appellant must prove by a preponderance
of the evidence that counsel=s representation fell below the objective
standard of prevailing professional norms, and there is a reasonable
probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at  690B94.  An appellant=s failure to
satisfy one prong makes it unnecessary for a court to consider the other prong.  Id. at 697. 
This test is applied to claims arising under the Texas Constitution as well as
those arising under the United States Constitution.  Hernandez v. State,
726 S.W.2d 53, 56B57 (Tex. Crim. App. 1986) (en banc).  Our review of defense
counsel=s performance is highly deferential,
beginning with the strong presumption that the attorney=s actions were reasonably
professional and were motivated by sound trial strategy.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc).  When the record is
silent as to trial counsel=s strategy, we will not conclude that defense counsel=s assistance was ineffective unless
the challenged conduct was A>so outrageous that no competent
attorney would have engaged in it.=@ Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)). 

We
review a trial court=s ruling on a motion for new trial under an
abuse-of-discretion standard.  Webb v. State, 232 S.W.3d 109, 112 (Tex.
Crim. App. 2007).  We do not substitute our judgment for that of the trial
court, but instead determine whether the trial court=s decision regarding the
ineffective-assistance claim was arbitrary or unreasonable.  See id.  A
trial court abuses its discretion in denying a motion for new trial only when
no reasonable view of the record could support its ruling.  Id.








2.         Application to Issue One 

In his
first issue, appellant lists numerous alleged deficiencies by his trial
counsel.  These complaints encompass every facet of his trial counsel=s representation.  In over twenty
pages in his brief,[3] he identifies
a multitude of alleged deficiencies on the part of his trial counsel, including
failure to (1) interview all the witnesses identified by appellant; (2)
properly voir dire the venire panel regarding probation and appellant=s brain injury; (3) object to or
counter various statements made by the prosecution or members of the venire
panel during voir dire; (4) review appellant=s financial records; (5) investigate
the significance of appellant=s out-of-state judgments and sentences; (6) execute his
peremptory strikes or challenge panel members for cause; (7) question witnesses
called to testify and object to various testimony; (8) adequately cross-examine
the complainant about previous false accusations; (9) prepare witnesses for
testimony during the punishment phase of his trial; and (10) advise appellant
to testify during the guilt-innocence phase of his trial.[4] 









But
appellant has not explained how most of these alleged deficiencies constitute
ineffective assistance of counsel.[5] In fact, the
only analysis provided by appellant regarding the multiple alleged failures
identified in his first issue is as follows:

In this
case as in Butler v. State, 716 S.W.2d 48 (Tex. Crim. App. 1986),
counsel failed to first perform an independent investigation of the law and the
facts and then make strategic choices.  As such was not done, then there cannot
be a plausible explanation for the failure to do so.  Surely had this been
done, [a]ppellant would have been either not guilty or received a lesser
sentence.

AIt is
fundamental error that an attorney must acquaint himself not only with the law
but also the facts of a case before he can render reasonably effective
assistance of counsel. . . [T]hat burden may not be sloughed off to an
investigator. . .  It is counsel=s
responsibility.@

Flores
v. State, 576 S.W.2d 632 (Tex. Crim.
App. 1979).  Similarly the duty to investigate facts may not be sloughed off to
an associate.[[6]]  If counsel
does so he must be held constructively aware of the information his associate
learns.  The Flores court found these omissions in counsel=s investigation of his client=s alibi defense were not the result of reasonable
professional judgments. 

Likewise in
[a]ppellant=s case, the above failures and omissions were not the
result of reasonable professional judgments but of neglect and incompetency and
resulted in ineffective assistance of counsel.  Clearly had [a]ppellant
testified and had counsel used the witnesses [a]ppellant designated instead of
[the complainant=s mother], he would have had his defense developed
fully and significant character witnesses to establish [a]ppellant=s character as good for safe and moral relations with
children and teenagers.  The probability would have been high that [a]ppellant
would have been found not guilty.








In
sentencing[,] had counsel properly prepared witnesses and requested probation
or a lesser sentence, the probability is high that [a]ppellant would have
received probation or a lesser sentence.  Because of the ineffective assistance
in failing to conduct a complete investigation of [a]ppellant=s defense and the character of [a]ppellant, the
complainant and [her mother], as well as not representing [a]ppellant zealously
in voir dire, cross-examination, direct examination, close on guilt/innocence
and sentencing, [a]ppellant received ineffective assistance of counsel.

Although appellant has
also briefed the constitutional doctrine supporting an ineffective assistance
of counsel claim, it is insufficient that an appellant raise only a general
constitutional doctrine in support of his request for relief.  Bell v. State,
90 S.W.3d 301, 305 (Tex. Crim. App. 2002) (en banc).  An appellant must cite
specific legal authority and provide legal arguments based on that authority. Id.
 Thus, the only aspect of appellant=s ineffective assistance of counsel
claim that is adequately briefed in this case is whether his trial counsel
investigated the facts of his case.

Trial
counsel=s representation may fall below an
objective standard of reasonableness if counsel does not conduct an adequate
pretrial investigation.  Salinas v. State, 274 S.W.3d 256, 261 (Tex.
App.CHouston [14th Dist.] 2008, pet.
filed) (citing Wiggins v. Smith, 539 U.S. 510, 521B22, 533B34 (2003)).  Counsel has a duty to
make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary.  Id.  Generally, we defer to
counsel=s judgments regarding decisions about
the type of investigation necessary in a particular case.  See id.








The
adequacy of trial counsel=s investigation into appellant=s case was addressed during the
hearing on appellant=s motion for new trial.[7] 
John Morgan, one of appellant=s trial attorneys, stated that he hired an investigator and
spoke to several possible witnesses.  Morgan also testified that he brought in
a Aspecialist,@ Charles Thompson, to assist him in
defending appellant because Thompson had extensive experience in sexual assault
cases both as a prosecutor and as a defense attorney.  Thompson explained that
he and Morgan did not call several potential character witnesses because they
did not want to highlight appellant=s past drug and alcohol problems, and
these witnesses knew appellant through various recovery programs.  Thompson
further testified that they did not want to permit cross-examination regarding
whether these witnesses= opinions had changed about appellant in light of the current
conviction.  In Thompson=s opinion, doing so would have allowed the prosecutor to
remind the jury about appellant=s conviction with each witness, which, in effect, would have
given the State the opportunity to perform a Amini-closing@ argument with each witness.[8] 
Finally, Thompson stated that he and Morgan advised appellant not to testify
during the guilt-innocence phase because appellant often became angry during
their mock cross-examination of him and his medical issues prevented him from
remembering some things.  








In sum,
the record reflects that both attorneys who represented appellant reviewed the
facts of the case, discussed their options with appellant, and made strategic
decisions regarding which witnesses to call.  AIt is axiomatic that appellant=s constitutional right to counsel
does not mean errorless counsel where competency or adequacy of representation
is argued or judged purely by hindsight.@  Holland v. State, 761 S.W.2d
307, 320 (Tex. Crim. App. 1988).  The fact that another attorney may have acted
in a different manner is not sufficient to prove ineffective assistance.  Kesaria
v. State, 148 S.W.3d 634, 638 (Tex. App.CHouston [14th Dist.]), aff=d, 189 S.W.3d 279 (Tex. Crim. App. 2006).  Further, any
error in trial strategy rises to the level of ineffective assistance only when
counsel=s actions lack any plausible basis.  Id. 
Although in hindsight, appellant=s trial counsel may have made
strategic decisions that did not work entirely in appellant=s favor, we cannot say these
decisions lacked any plausible basis or resulted from an inadequate
investigation into the facts of appellant=s case.  

Under
these circumstances, we conclude that the trial court did not abuse its
discretion in denying appellant=s motion for new trial on the basis of ineffective assistance
of counsel.  We therefore overrule appellant=s first issue.

3. 
Application to Issue Three

In his
third issue, appellant asserts that his trial counsel was ineffective because
either (a) a conflict of interest existed between appellant and the complainant=s mother Linda or (b) his trial
counsel Aentered into an agreement@ with Linda to forego the use of
appellant=s girlfriend as a defense witness so that Linda would testify.  








Ineffective
assistance of counsel may result when an attorney labors under a conflict of
interest.  Acosta v. State, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007). 
To demonstrate a violation of his right to effective assistance of counsel
based on such a conflict, a defendant must show that (1) his counsel was
burdened by an actual conflict of interest and (2) his trial counsel actually
acted on behalf of the other interest at trial.  Id. at 356 (citing Cuyler
v. Sullivan, 446 U.S. 335 (1980)).  Here, appellant has not explained either
how his trial counsel=s decision to rely on Linda=s testimony constituted a conflict of
interest or how his trial counsel actually acted on any such interest.  
Indeed, there is absolutely no indication in the record that appellant=s trial counsel was representing
Linda=s interests in any manner.  At best,
appellant asserts that there was a potential conflict of interest between him
and his trial counsel.  But the showing of a potential conflict of interest
does not constitute an actual conflict of interest.  Ex parte McFarland,
163 S.W.3d 743, 759 n.52 (Tex. Crim. App. 2005) (en banc) (citing Routier
v. State, 112 S.W.3d 554, 579 (Tex. Crim. App. 2003) and distinguishing
between actual and potential conflicts of interest).  Thus, appellant
has failed to establish that his counsel was burdened by any actual conflict of
interest.  See Acosta, 233 S.W.3d at 355B56.  Further, appellant has not shown
that his trial counsel acted on any conflict of interest, assuming one even
existed.  See id.

Finally,
even if we construe this issue as a complaint regarding his trial counsels= decision to rely on the complainant=s mother Linda as the primary defense
witness in lieu of calling appellant=s girlfriend as a witness, appellant
has failed to establish that such a decision resulted in ineffective assistance
of counsel.  The strategy behind his trial counsel=s decision to rely on Linda=s testimony was addressed several
times during the hearing on appellant=s motion for new trial.  For example,
in response to a question regarding the development of trial strategy, trial
counsel Morgan stated, AWe felt like the person who was around the family unit at the
time that this alleged abuse took place would have been primarily Linda and
[appellant].  We felt like the best witness we had, and we pretty much put our
eggs in her basket, was for Linda to be the main witness for us.@  Further, Morgan explained his
choice to rely on Linda, rather than appellant=s then-girlfriend, as follows: A[W]e felt like Linda was a much more
important witness for this case than [appellant=s girlfriend] because of the time
frame, because of where Linda was [when] the assaults took place . . . .@  In light of these explanations,
appellant=s trial counsel=s decision to rely on the complainant=s mother as their primary witness did
not lack any plausible basis.  See Kesaria, 148 S.W.3d at 638.

Because
appellant has not shown that his trial counsel was burdened by an actual
conflict of interest or that his counsel=s decision to rely on the testimony
of the complainant=s mother lacked any plausible basis, he has not established
that his counsel was ineffective.  We therefore overrule his third issue.








B.        Impartial Jury

In his
second issue, appellant asserts that he was denied the constitutional right to
a fair and impartial jury.  A criminal defendant has a constitutional right to
a fair and impartial jury.  See U.S.
Const. amend. VI; Tex. Const. art.
1, ' 10.  This right, however, is subject
to waiver by the defendant.  State v. Morales, 253 S.W.3d 686, 697 (Tex.
Crim. App. 2008) (en banc); see also Delrio v. State, 840 S.W.2d 443,
445 (Tex. Crim. App. 1992) (en banc) (A[W]e have recognized [an impartial
jury] to be a right of the accused, which must be pressed in some fashion at
trial before reversal of his conviction may be predicated upon its breach.@).

Here,
appellant did not challenge for cause any of the jurors about which he now
complains.  In addition, appellant=s trial counsel affirmatively stated
that he had no objection to the jury.[9]  Appellant
has therefore not preserved this issue for our review.  We overrule his second
issue.       

C.        Venue








In his
fourth and final issue, appellant argues that the State did not prove that
venue of this offense was proper in Harris County.  The State bears the burden
to establish venue by a preponderance of the evidence.  Black v. State,
645 S.W.2d 789, 790 (Tex. Crim. App. 1983) (en banc).  The evidence used to
satisfy the burden may be either direct or circumstantial. Id. The
evidence of venue is sufficient if it permits the factfinder to reasonably
conclude that the offense was committed in the county alleged.  Rippee v.
State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964); Sudds v. State,
140 S.W.3d 813, 818 (Tex. App. Houston [14th Dist.] 2004, no pet.).  Finally, A[v]enue will stand if it is
sufficient under any one of the venue provisions the jury was instructed upon.@  Murphy v. State, 112 S.W.3d
592, 605 (Tex. Crim. App. 2003) (en banc). 

Here,
the jury was instructed on venue as follows:

A sexual
assault prosecution may be brought within the county in which the sexual
assault offense was committed. . . .  However, if an offense has been committed
within the state and it cannot readily be determined within which county or
counties the offense was committed, the trial may be held in a county in which
the defendant resides, in a county in which he is apprehended, or in a county
to which he is extradited.

This instruction contains
language from Texas Code of Criminal Procedure articles  13.15 and 13.19.  See
Tex. Code Crim. Proc. Ann.
arts. 13.15, 13.19 (Vernon 2005).  Thus, venue was appropriate in Harris County
if the State established, by a preponderance of the evidence,  either (a) the
sexual assault occurred in Harris County, or (b) it was not readily
determinable in which Texas county the offense occurred and the defendant
resided in, was apprehended in, or extradited to Harris County.








Here,
the complainant testified regarding numerous sexual assaults.  She stated that
she believed one of the specific instances of sexual assault occurred in Harris
County.[10]  Further,
she testified that the other incidents occurred at her mother=s home on Princess Street in South
Houston, which is located in Harris County.  Thus, the State established, by a
preponderance of the evidence, that venue was appropriate in Harris County.  We
therefore overrule appellant=s fourth issue.

IV.  Conclusion

In sum, we conclude that appellant=s trial counsel was not ineffective
and that appellant failed to preserve his complaint that he was denied the
right to a fair and impartial jury.  We further conclude that the State
established venue in Harris County by a preponderance of the evidence. 
Therefore, we overrule appellant=s issues and affirm the judgment of
the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

Panel consists of Chief
Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Although she
was twenty-one years old at the time of trial, we refer to the complainant by
the pseudonym ASheila@ to protect her
identity.





[2]  This assault
occurred when appellant and the complainant were on the way to a WalMart
store.  Appellant pulled his truck off the road into a wooded area and
assaulted the complainant.  Although the complainant could not state Abeyond a reasonable doubt@ that the location of this particular assault was in
Harris County, she stated that she believed it was.





[3]  See Appellant=s
Brief pp. 7B29.





[4]  The State
consolidates appellant=s complaints as follows:

Appellant
identifies dozens of instances in which he claims his trial lawyers were
ineffective.  Among his many criticisms, he complains of their purported
failure to: (1) interview potential witnesses; (2) investigate factual matters;
(3) allow appellant to testify; (4) call certain character witnesses; (5)
properly exercise peremptory strikes and challenges for cause; (6) object or
seek a mistrial following certain comments by venirepersons; (7) address
various subject matters during voir dire; (8) effectively present a closing
argument at guilt-innocence; (9) object to the prosecutor=s closing argument; (1) prepare punishment witnesses;
(12) object to certain punishment evidence; (13) present a proper closing
punishment argument; (14) object to the prosecutor=s leading questions; (15) object to testimony
involving hearsay, speculation, and narrative answers; (16) properly address
appellant=s probation eligibility; (17) present evidence of the
complainant=s purported false accusations against others; (18)
pursue a trial strategy that relied less heavily on Linda=s testimony; and (19) investigate the status of an
out-of-state conviction.





[5]  See, e.g., Garcia v. State, 887 S.W.2d 862, 880B81 (Tex. Crim. App. 1994) (en banc) (overruling claim
that counsel was ineffective due to his failure to object because appellant
failed to explain Ahow counsel might have kept the statement out@), abrogated by Hammock v. State, 46 S.W.3d 889
(Tex. Crim. App. 2001); Peake v. State, 133 S.W.3d 332, 334 (Tex. App.CAmarillo 2004, no pet.) (A[W]e are left to guess at the reasoning underlying
appellant=s claim and at the legitimacy of that reasoning, if
any.  And, because of that, the complaint was waived due to insufficient
briefing.@); Melonson v. State, 942 S.W.2d 777, 782 (Tex.
App.CBeaumont 1997, no pet.) (holding that an appellant
must not only specifically identify the deficiencies in counsel=s performance but also identify the specific objection
that should have been made and provide authority in support of his argument
that the objection would have been meritorious). 





[6]  Appellant has
not cited any authority for this proposition.





[7]  For those
allegations that were not raised at the hearing on the motion for new trial,
such as appellant=s complaints regarding his trial counsel=s use of peremptory strikes during voir dire, the
record is insufficient to overcome the presumption that appellant=s trial counsel acted in a reasonably competent and
professional manner.  Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).





[8]  Appellant=s trial counsel called five witnesses to testify
regarding appellant=s good character at the punishment hearing.  Several
of these witnesses also testified that they believed appellant would be a good
candidate for probation.  Appellant also testified that he believed he was
eligible  and would be a good candidate for probation.  Finally, the jury was
charged on the issue of probation, yet returned a verdict of thirty-three years= confinement.  See Tex. Code Crim. Pro. Ann. art 42.12 ' 4(d)(1) (Vernon Supp. 2008) (defendant not eligible
for probation if jury sentences him to more than ten years in prison).





[9]  In Dixon v.
State, this court concluded in an unpublished memorandum opinion that an
affirmative representation that a defendant has Ano objection@ to the composition of the jury effectively waives any
preserved complaint regarding a trial court=s
denial of a challenge for cause.  No. 14-05-00131-CR, 2006 WL 2548175, at *6
(Tex. App.CHouston [14th Dist.] Sept. 5, 2006, no pet.) (mem.
op., not designated for publication) (citing Canales v. State, No.
05-94-01741-CR,  1996 WL 547955, at *4 (Tex. App.CDallas Sept. 17, 1996, no pet.) (not designated for publication) (ABy stating [he had] no objection [to the jury],
appellant affirmatively waived any error to the composition of the jury.)).  As
noted supra, appellant did not assert challenges for cause to any of
these jurors. 





[10]  On direct
examination, the complainant testified that a specific instance of sexual
assault, which occurred in appellant=s
truck, happened in Harris County.  Further, she reiterated her belief that this
specific incident occurred in Harris County during the following exchange with
appellant=s trial counsel:

Q.         And you don=t know this place, the exact location of this place, do you?

A.         No, I do not.

Q.         So it would be fair to say you can=t tell this jury beyond a reasonable doubt that this
location was in Harris County, can you?

A.         I believe it was, but, no, not beyond a reasonable doubt.