**Asad Wali KESARIA, Appellant**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–03–00908–CR, 14–03–00909–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 12, 2004.

Feroz Farook Merchant, Houston, for appellants.

Keisha Lashanne Smith, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant Asad Wali Kesaria was convicted by a jury in a single trial of two felony offenses: (1) burglary of a habitation with intent to commit theft; and (2) burglary of a habitation with intent to commit injury to a child. The jury assessed punishment in each cause at ten years' confinement, probated for ten years, and a $10,000 fine. As a condition of appellant's probation, the court ordered appellant to serve 180 days in the Harris County Jail for each conviction and required those periods to run consecutively. Asserting five points of error in two separate briefs, appellant contends: (1) he was denied effective assistance of counsel; (2) the evidence was factually insufficient to sustain the conviction; (3) the trial court erred by excluding an excited utterance; (4) the exclusion of the excited utterance deprived him of due process and the right to present a defense; and (5) the trial court erred in stacking the jail time for each offense. Because all dispositive issues are clearly settled in law, we issue this memorandum opinion. *See* Tex.R.App. P. 47.4. We affirm.

## Background

On March 18, 2003, at approximately 10:30 p.m., twenty-nine year old Dr. Simeen Jhaver and her thirteen-year old brother Muhamadali, were alone in their home watching television in the living room when they heard the rustling of window blinds in the adjoining master bedroom. Simeen walked into that bedroom and observed one man inside and another coming through the window, both wearing stocking masks and gloves.

Simeen attempted to run out of the room and was pushed down by one of the men. Muhamadali hit one of the burglars and was subsequently punched in the face suffering an injury to his nose. Using duct tape, the men tied Simeen and Muhamadali's hands together and covered their eyes by wrapping their heads with the tape.

Simeen and Muhamadali testified the intruders were inside their home approximately twenty to thirty minutes. They testified that during that time, appellant remained with them, got Muhamadali a towel to stop his bleeding nose, and talked while his accomplice went throughout the house taking money and jewelry. Simeen testified she could see appellant through slits in the duct tape, and because her hands were tied in front of her, she was able to adjust the tape. She recognized appellant by physique, height, structure of his face, and voice. Muhamadali testified that he was able to see appellant before his eyes were taped, and while taped, when he was lying down. Both Simeen and Muhamadali testified that they were familiar with appellant because they attended the same mosque and, on several occasions, appellant had been a guest in their house.

However, three witnesses testified appellant could not have committed the crimes at the time alleged because he was with them at a birthday party. Appellant's first alibi witness, his sister-in-law, stated appellant came to her house before nightfall with a friend to celebrate her son's eighth birthday and did not leave until midnight. Appellant's second witness, his fifteen-year-old niece and daughter of his sister-in-law, similarly testified that appellant came to the house around 8:30 p.m. and was still there when she went to sleep at 11:30 that evening. Appellant's third witness, a seventeen-year-old friend of appellant, testified that he accompanied appellant to the birthday party at 8:30 P.M. and that they did not leave until midnight.

### Ineffective Assistance of Counsel

 In his first issue, appellant asserts he was denied effective assistance of counsel because his attorney failed to object to harmful hearsay and double hearsay. Specifically, on direct examination of Detective Brown, Brown testified that he had been informed appellant was involved. Brown stated that he got the information from the reporting deputy's report and the information on the report was taken from statements made by one of the witnesses and Altaf Kesaria, appellant's brother. Later, during closing arguments, the prosecutor repeated the information.

The United States Supreme Court has established a two-prong test to determine whether counsel was ineffective. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must prove (1) his trial counsel's representation was deficient and (2) his trial counsel's deficient performance was so serious that it prejudiced his defense. *Id.* at 686–87, 104 S.Ct. 2052; *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002). To establish deficient performance, appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms, and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Id.* Appellant must identify specific acts or omissions of counsel that constitute the alleged ineffective assistance and affirmatively prove that they fell below the professional norm for reasonableness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996) *overruled on other grounds by, Mosley v. State*, 983 S.W.2d 249, 263 (Tex.Crim.App. 1998) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). The alleged ineffectiveness must be firmly founded in the record. *Bone*, 77 S.W.3d at 835. If appellant fails to satisfy either prong of the test, we do not need to consider the remaining prong. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Judicial scrutiny of counsel's performance must be highly deferential, and we indulge a strong presumption that counsel was effective. *Id.* at 689, 104 S.Ct. 2052; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). We presume counsel's actions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (stating that a fair assessment of attorney performance requires every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial). Appellant must overcome this presumption by illustrating why trial counsel did what he did. *Belcher v. State*, 93 S.W.3d 593, 595 (Tex. App.-Houston [14th Dist.] 2002, pet. dism'd). When evaluating an allegation of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). The fact that another attorney may have acted in a different manner will not be sufficient to prove ineffective assistance, and an error in trial strategy will be considered inadequate only if counsel's actions lack any plausible basis. *Dickerson v. State*, 87 S.W.3d 632, 637 (Tex.App.-San Antonio 2002, no pet.).

 Generally, the record on direct appeal is not sufficient to establish a claim of ineffective assistance of counsel because a silent record cannot rebut the presumption that counsel's performance was based on sound or reasonable trial strategy. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim.App.2002). A reviewing court should not second guess trial counsel's strategy in hindsight; thus, an affidavit supporting a motion for new trial can be critical to the

success of a claim for ineffective assistance. *Storr v. State*, 126 S.W.3d 647, 651 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In the absence of a record explaining trial counsel's actions, a reviewing court most likely cannot conclude trial counsel's performance fell below an objective standard of reasonableness unless the conduct was so outrageous that no competent attorney would have engaged in it.[1] *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim.App.2001); *Storr*, 126 S.W.3d at 650–51.

Appellant filed a motion for a new trial asserting "[t]he verdict in the cause is contrary to the law and the evidence." The motion was subsequently denied. Nonetheless, the record contains no evidence of the reasoning behind his trial counsel's actions in failing to object to the hearsay statement. Therefore, we cannot conclude that counsel's performance was deficient. *See Jackson*, 877 S.W.2d at 771–72; *see also Thompson*, 9 S.W.3d at 814 (holding that when the record provides no explanation as to the motivation behind trial counsel's actions, an appellate court should be hesitant to declare ineffective assistance of counsel). The appellate court is not required to speculate on the reasons behind trial counsel's actions when confronted with a silent record. *Jackson*, 877 S.W.2d at 771. Appellant fails to provide this court with any evidence rebutting the presumption that counsel was providing effective assistance. Thus, appellant has not satisfied his burden on appeal to rebut the presumption that counsel's actions were reasonably professional and motivated by sound trial strategy. Because appellant produced no evidence concerning trial counsel's reasons for choosing the course he did, his first issue is overruled.

## Factual Sufficiency

■ In his second issue, appellant contends the evidence is factually insufficient to support his conviction. Appellant argues the testimony of the two eyewitnesses who identified him as the culprit were inconsistent and implausible. Because appellant does not challenge the legal sufficiency of the evidence, our review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the judgement was legally sufficient. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

■ In conducting a factual sufficiency review, we view all the evidence in a neutral light, without favoring either party. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex.Crim.App.2000). We will set aside the verdict only if: (1) the evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if present, is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App. 2004); *Roy v. State*, Nos. 14–02–00909–CR, 14–02–00910–CR, —— S.W.3d ——, ——, 2004 WL 1607489, at *4 (Tex.App.-Houston [14th Dist.] July 20, 2004, no pet. h.). When reviewing the evidence, we must give appropriate deference to the

---

1. Appellant cites *Ramirez v. State*, which held that defendant's counsel was ineffective, even without evidence in the record explaining trial counsel's actions, for failure to object to a statement at trial. 987 S.W.2d 938, 944–45 (Tex.App.-Austin 1999, pet. ref'd). We are not bound by that decision. Moreover, this case is distinguishable on its facts. In *Ramirez*, the statement that counsel failed to object to was the only evidence in the record supporting the defendant's conviction for aggravated sexual assault. *Id.* Here, the un-objected to testimony was not the only evidence in the record supporting a conviction.

jury findings in order to avoid intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Johnson,* 23 S.W.3d at 7. Therefore, unless the record reveals a different result is appropriate, we "must defer to the jury's determination considering what weight to give contradictory testimonial evidence, because resolution often turns on evaluation of credibility and demeanor." *Id.* at 8.

The issue in this case turns on identity. Appellant argues the testimony of the two eyewitnesses, Simeen and Muhamadali Jhaver, was inconsistent and implausible and directs us to the testimony from the three alibi witnesses [2] that they were with appellant at a birthday party at the time of the burglary.

Appellant argues that Simeen's testimony is internally inconsistent. Simeen testified she told either Officer Thorton or Detective Brown that she could identify one of the intruders. However, Detective Brown testified that Simeen told him she could possibly recognize one of the intruders. The initial incident report, taken by Officer Thorton, states that Simeen gave the name Parvez Merchant as a possible suspect, but said nothing about appellant. Similarly, Simeen's statement to Detective Brown on March 21, 2003, does not include appellant's name.

Appellant also argues Muhamadali's testimony is internally inconsistent. Appellant points to Muhamadali's testimony that he could see 50% of the perpetrators' faces through the pantyhose masks and that it was enough to determine 100% who they were. Appellant claims the record reflects an inconsistency in Muhamadali's testimony concerning exactly when he was able to

identify appellant during the intrusion. However, the record does not clearly establish when Muhamadali first recognized appellant. The record merely states that Muhamadali was able to see at least some of the perpetrators' faces even though they were covered with pantyhose and that he was able to recognize appellant at some point during the intrusion.

Appellant also questions Muhamadali's credibility in making his identification because he never mentioned appellant as an intruder to any law enforcement officials on the night of the incident or when he gave his statement to the detective on March 27, 2003. However, Detective Brown testified he did not interview Muhamadali the night of the incident because Muhamadali was injured. Muhamadali testified that on the night of the incident, he did not tell the police he could identify one of the burglars because he left that to his sister, and he did not put it in his statement to the detective because he was just asked to tell what happened, not to give his opinion.

Appellant also contends that the identification by Simeen and Muhamadali is implausible because the intruders covered the victims' eyes with duct tape, wore pantyhose over their heads, and punched Muhamadali in the face destroying his glasses. However, despite appellant's contentions, Simeen and Muhamadali: (1) unequivocally identified appellant as the man who burglarized their home; (2) observed the intruders in their home for a period of time while the lights were on and before tape was placed over their eyes. Both eyewitnesses testified they could see through the tape; [3] they heard appellant

**2.** Appellant's three witnesses included his sister-in-law, niece, and friend.

**3.** Simeen testified that she was able to see appellant through slits in the tape and be-

cause her hands were taped in front of her, she was able to adjust the tape around her eyes. Muhamadali testified that despite the tape over his eyes, he was able to see when he

speak and recognized his voice; appellant stood by them during the burglary and retrieved a towel for Muhamadali to stop his nose from bleeding; and both witnesses testified that they were familiar with appellant because they had seen and met him on several occasions inside their house and at their place of worship.

 Positive identification of a defendant by the victim of a robbery is to be given great weight. *Haywood v. State*, 507 S.W.2d 756, 758 (Tex.Crim.App.1974); *Jones v. State*, 687 S.W.2d 430, 432 (Tex. App.-Houston [14th Dist.] 1985, no pet.); *see also Davis v. State*, 831 S.W.2d 839, 842 (Tex.App.-Dallas 1992, pet. ref'd) (holding that positive identification by victim was sufficient to sustain conviction, even though defendant offered five alibi witnesses that he was in another state at the time of the crime). Our evaluation should not intrude upon the fact-finder's role as the sole judge of the weight and credibility of the evidence. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Moreover, "[a] decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State." *Id.* After considering the evidence in a neutral light, we conclude that the evidence is not too weak to support the finding of guilt beyond a reasonable doubt, and that contrary evidence was not strong enough to conclude the reasonable doubt standard could not be met. Therefore, appellant's second issue is overruled.

### Hearsay

 In his third and fourth issues, appellant asserts the trial court erred by excluding an excited utterance of the complainant's wife[4] and that this error de-

was lying down because the tape was not flat over the eyes.

prived him of due process and the right to present a defense. Specifically, appellant challenges the trial court's refusal to allow appellant's brother to testify about a statement made by the complainants's wife. The relevant testimony is as follows:

> **Defense Attorney:** He's (Altaf, brother of appellant) going to testify that he was with them (mother and father of Simeen and Muhamadali) and that the mother said an excited utterance, and I'm going to try and get it in, oh, God spoke to me, I know it was Wali, Norma and Asad that committed this crime. She said that right after she found out.
>
> **Court:** What possible probative value does that have?
>
> **Defense Attorney:** The fact that she said that and the daughter and the son got the idea from naming Asad when she said—they told the detective and told that officer that night it was clearly Asad, which is not true.
>
> **Court:** I'm not going to let it in.
>
> **Defense Attorney:** Not going to let it in?
>
> **Court:** No, sir.

 The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003) (citing *Lawton v. State*, 913 S.W.2d 542, 553 (Tex.Crim.App.1995)). Therefore, a reviewing court should not reverse unless a clear abuse of discretion is shown. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (quot-

4. The complainant is Medhi Jhaver, the father of Simeen and Muhamadali. There is no evidence in the record of the name of Medhi's wife.

ing *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992)).

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(d). For hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence. TEX.R. EVID. 802. An excited utterance under Texas Rule of Evidence 803(2) is one such exception.

■ An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R. EVID. 803(2); *Salazar v. State,* 38 S.W.3d 141, 154 (Tex. Crim.App.2001), *cert. denied,* 534 U.S. 855, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). For the excited-utterance exception to apply, three requirements must be shown: (1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous; (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it. *Jackson v. State,* 110 S.W.3d 626, 633 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *see also McFarland,* 845 S.W.2d at 846.

■ In determining whether a statement is an excited utterance, the "pivotal inquiry is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event.'" *King v. State,* 953 S.W.2d 266, 269 (Tex.Crim.App. 1997) (quoting *McFarland,* 845 S.W.2d at 846); *Drew v. State,* 76 S.W.3d 436, 457–58 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd), *cert. denied,* 537 U.S. 1047, 123 S.Ct. 601, 154 L.Ed.2d 520 (2002); *see*

*Ricondo v. State,* 475 S.W.2d 793, 796 (Tex.Crim.App.1971) (stating that the statement is deemed trustworthy because it represents an event speaking through the person rather than the person speaking about the event). To determine whether a hearsay statement is admissible as an excited utterance, the court may consider such factors as time elapsed and whether the statement was in response to a question. *Salazar,* 38 S.W.3d at 154. However, these factors are not dispositive. *See Lawton,* 913 S.W.2d at 553.

At trial in the instant case, there was no showing by appellant that the declarant's statement, if made, was made while she was excited or in the grip of a shocking event. When appellant sought admission of the hearsay testimony, appellant failed to establish the testimony was a statement relating to a startling event or condition while the declarant was under the stress of excitement caused by the event or condition. Similarly, the record does not reveal where she allegedly made the statement, or who was in her presence when the statement was made. Therefore, we hold that the out-of-court statement was not an excited utterance and it was not error for the trial court to exclude this hearsay evidence. We overrule appellant's third issue.

■ In his fourth issue, appellant argues the trial court erred by not admitting the complainant's wife's statement because the exclusion of the statement violated the Due Process Clause of the Fourteenth Amendment by preventing him from presenting a defense. Because appellant did not raise his due process argument at trial, he has failed to preserve this point of error for our review. *See Wright v. State,* 28 S.W.3d 526, 536 (Tex.Crim.App.2000), *cert. denied,* 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001) (holding where appel-

lant objected to hearsay but not under the Confrontation Clause, appellant waived the constitutional argument on appeal); *Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim. App.1990) (stating that even constitutional error may be waived); *Castillo v. State,* 79 S.W.3d 817, 827 (Tex.App.-Dallas 2002, pet. ref'd), *cert. denied,* 538 U.S. 924, 123 S.Ct. 1593, 155 L.Ed.2d 315 (2003) (holding that appellant waived due process argument on appeal by not objecting to the failure of the court reporter to record the punishment hearing); *see also* TEX.R.APP. P. 33.1(a).

■ Even if appellant had preserved this point of error, his due process argument is without merit. Appellant cites *Potier v. State,* 68 S.W.3d 657 (Tex.Crim. App.2002), to support his contention that his due process rights were violated. In *Potier,* the trial court erroneously excluded evidence due to a misinterpretation of the hearsay rule. *Id.* at 666. The Court of Criminal Appeals held the exclusion did not rise to the level of constitutional error. *Id.* The court further held "that the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 665.

In the present case, as we concluded above, the excluded evidence does not fall under the excited utterance exception to the hearsay rule and does not bear persuasive assurances of trustworthiness; thus, appellant's reliance on *Potier* is misplaced. Moreover, exclusion of the statement did not prevent appellant from presenting "a defense." *See id.* at 666 (stating that the erroneously excluded evidence may have been relevant to self-defense, but exclusion did not prevent appellant from presenting a defense). At trial, appellant's counsel argued the State failed to prove its case

beyond a reasonable doubt, stating he had "never seen a case so full of reasonable doubt" in his life. Appellant's defense also included an alibi with three witnesses stating that he was at a party. Because appellant was able to present "a defense," we conclude appellant's due process rights were not violated. *See. id.* For this additional reason, we overrule appellant's fourth issue.

**Stacking of Confinement Periods**

■ In his fifth issue, appellant argues the trial court erred in stacking the jail time of both of his cases. The jury assessed appellant's punishment at ten years' confinement in each case and recommended community supervision. However, as a condition of appellant's probation, the trial judge ordered appellant to serve 180 days in the Harris County Jail in each case, with the periods of confinement to run consecutively. Appellant did not object to the conditions at trial, but complains about them for the first time on direct appeal.

The trial court's authority under Texas Code of Criminal Procedure article 42.08 to order consecutive sentences is statutorily limited by Texas Penal Code Section 3.03. *See LaPorte v. State,* 840 S.W.2d 412, 415 (Tex.Crim.App.1992); *see also* TEX.CODE CRIM. PROC. ANN. Art. 42.08(a) (Vernon Supp.2004). When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a *sentence* for each offense for which the accused has been found guilty shall be pronounced and such sentence shall run concurrently. *See* TEX. PEN.CODE ANN. § 3.03(a) (Vernon 2003). While there are exceptions to the rule in 3.03(a), § 3.03 does not authorize stacking of sentences for offenses involving burglary of a habitation. *See* TEX. PEN. CODE ANN. § 3.03(b) (Vernon 2003).

But, community supervision is not part of the sentence. *Speth v. State*, 6 S.W.3d 530, 532 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1088, 120 S.Ct. 1720, 146 L.Ed.2d 642 (2000). Rather, community supervision is the suspension of the sentence received by the defendant at trial. TEX.CODE CRIM. PROC. ANN. Art. 42.12 § 2(2) (Vernon Supp.2004). The trial court's "granting of community supervision is a privilege, not a right." *Speth*, 6 S.W.3d at 533 (citing *Flores v. State*, 904 S.W.2d 129, 130 (Tex.Crim.App.1995) (plurality opinion) (there is no fundamental right to receive probation; it is within the discretion of the trial court to determine whether an individual defendant is entitled to probation), *cert. denied*, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996)). Probation can be viewed as a contract between the court and a defendant, in which the court agrees to grant a sort of clemency by way of probation if the defendant will perform certain requirements and conditions. *Speth*, 6 S.W.3d at 533 (citing *Wilson v. State*, 156 Tex.Crim. 228, 240 S.W.2d 774, 775 (1951)). The judge has broad discretion in determining reasonable conditions of the community supervision that are "designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX.CODE CRIM. PROC. ANN. Art. 42.12 § 11(a) (Vernon Supp.2004). In the instant case, the judgement and the conditions of community supervision state that confinement is 180 days for each offense, to run consecutively, and upon completion of 360 days' confinement, to report to boot camp.[5]

Appellant failed to object to probation conditions requiring him to remain incarcerated for two consecutive periods of 180

days. In order to preserve error, a defendant must make a timely and specific objection. TEX.R.APP. P. 33.1(a)(1)(A); *Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim.App.2003). Nothing in the record reflects appellant made such an objection. Because community supervision is a privilege, not a right, and the conditions are agreed to by the court and the defendant, conditions not objected to are affirmatively accepted and any rights encroached upon by those terms are waived. *Speth*, 6 S.W.3d at 534. Therefore, appellant has not preserved the error, and has waived his objection. We overrule appellant's fifth issue.

We affirm the judgement of the trial court.

---

**5.** *See* TEX.CODE CRIM. PROC. ANN. Art. 42.12 § 12(a) (Vernon 2004) (stating that as a condition of community supervision in a felony case, a judge may require confinement up to 180 days).