**Affirmed and Memorandum Opinion filed July 16, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00086-CR

**DANIEL MORENO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1493090**

## MEMORANDUM OPINION

A jury found appellant, Daniel Moreno, guilty of capital murder[1] and the trial court sentenced him to life without the possibility of parole.[2] On appeal, appellant contends that the trial court erred by denying him an evidentiary hearing on his motion for new trial. Next, appellant argues the trial court erred by denying

---

[1] *See* Tex. Penal Code § 19.03(a)(2).

[2] "[U]nder current Texas law, the only alternative to the death penalty for a defendant convicted of capital murder is life without parole." *Ruiz v. State*, No. AP-75,968, 2011 WL 1168414, at *7 (Tex. Crim. App. Mar. 2, 2011)

his motion for new trial based on ineffective assistance of counsel. Last, he contends the trial court erred in denying admission of specific-act character evidence and in denying his request for a jury instruction on duress. We affirm.

## I. Background

In the early morning hours of December 22, 2015, appellant and co-defendant J. Vazquez were captured on video surveillance approaching an on-duty security guard ("the complainant"), who was sitting in his vehicle outside of a convenience store. Appellant and J. Vazquez approached the complainant from behind as he sat in his security vehicle. Appellant and J. Vazquez acted "fairly tactically," approaching the complainant in a manner called "stacking up"—a maneuver officers use when executing warrants. Appellant and J. Vazquez were positioned at the side of the building for approximately five minutes before approaching the complainant. J. Vazquez approached the complainant at the driver's side, while appellant ran to the passenger side. Appellant and J. Vazquez immediately shot at the complainant as soon as they each crossed the threshold between the front and rear passenger windows.

After appellant shot at the complainant, he immediately ran to the driver's side to help J. Vasquez loot the complainant's body. The surveillance footage shows what appears to be appellant placing something into his coat after he was reaching or leaning into the vehicle.

Appellant and J. Vazquez were both wearing gloves and had articles of clothing covering their heads and faces; appellant had a green bandana covering his nose and mouth. J. Vazquez held an AK-47 while appellant held a 9mm pistol.

While rummaging through the complainant's vehicle, J. Vazquez gave appellant the AK-47. According to appellant, J. Vazquez stole the complainant's

2

handgun. After J. Vazquez left the car and went back towards the side or back of the building, appellant lingered at the car. Appellant, without J. Vazquez present, grabbed the complainant's keys and tried to open the trunk of the security vehicle. Appellant, apparently unable to open the trunk quickly enough, threw the keys onto the ground by the car and ran away out of view of the surveillance camera. Both appellant and J. Vazquez ran from the scene. Appellant, however, was behind J. Vazquez by approximately 10 seconds.

When police found the complainant, he did not have a pistol in his gun belt, even though the complainant had a layaway receipt for a .45 handgun.

Officers were ultimately able to identify appellant and J. Vazquez as suspects and warrants were issued for their arrest.[3] Officers arrested appellant during a traffic stop and found a 9mm pistol attached to appellant's leg. Also during the arrest, officers found a ski mask and J. Vazquez' photo identification. A ballistics comparison indicated that the 9mm recovered from appellant's leg fired one of the shells/casings recovered from the murder scene. Additionally, officers executed a search warrant at appellant's home and recovered a number of relevant items from appellant's room:

- Three AK-47 rifles in their cases;
- 324 rounds of unfired 9mm ammunition;
- 1,532 rounds of unfired 7.62 x 39mm ammunition;
- 34 magazines (both loaded and unloaded) for AK-47 rifles; and
- a green bandana and black latex gloves.

---

[3] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and exhibits admitted at trial.

Appellant could not be excluded as a contributor to the major component of DNA profiles developed from both the green bandana and the latex gloves. Further, a ballistics comparison indicated that one of the AK-47 rifles fired 12 of the 7.62 type casings recovered from the scene. Appellant owned both the AK-47 and the 9mm that were used in the murder.

The defense presented evidence that J. Vazquez had a reputation for violence and manipulation, and that several witnesses held an opinion that J. Vazquez was violent and manipulative. Appellant claimed that he acted out of fear of J. Vazquez. However, appellant never stated that J. Vazquez threatened him, nor that J. Vazquez intentionally pointed a firearm at appellant in order to coerce his cooperation. According to appellant, J. Vazquez only told appellant they were going to go scare someone out of J. Vazquez' stuff. Appellant admitted that, if he wanted to, he could have left J. Vazquez, but instead put on articles of clothing to conceal his identity and joined J. Vazquez.

On January 25, 2018, a jury found appellant guilty of capital murder. The court sentenced appellant to life without the possibility of parole. After appellant was convicted, appellant retained new counsel and filed a motion for new trial alleging various forms of ineffective assistance of trial counsel. The trial court ordered appellant's former trial counsel to file affidavits in response to the allegations in the motion for new trial. The trial court held a hearing on the motion, at which the State, appellant and appellant's current counsel were present. The trial court, after considering the affidavits and arguments of both counsel, denied the motion for new trial. This appeal timely followed.

## II.      Analysis

## A.      Motion for new trial

In his first issue, appellant argues that the trial court abused its discretion in denying appellant a hearing on his motion for new trial and in denying his motion for new trial based on ineffective assistance of counsel.  He argues on appeal that we should grant him a new trial based on ineffective assistance of counsel.

### 1.      Evidentiary hearing

#### a.      Standard of review

Appellate courts review a trial court's denial of a request for a hearing regarding a motion for new trial under an abuse-of-discretion standard.  *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).  The right to a hearing on a motion for new trial is not an "absolute right." *See, e.g., Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993); *Moore v. State*, 4 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Instead, a trial court abuses its discretion in failing to hold a hearing on a motion for new trial if the motion (1) raises matters which are not determinable from the record and (2) establishes reasonable grounds showing that the defendant could potentially be entitled to relief.  *Smith*, 286 S.W.3d at 338–39.  To hold otherwise would deny the accused meaningful appellate review.  *McIntire v. State*, 698 S.W.2d 652, 660 (Tex. Crim. App. 1985).

On review, we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).  A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling.  *Id.*

The Court of Criminal Appeals has made clear the standard of review for denials of motion for new trial when such a denial is based on affidavits only, holding that "in the context of a denial of a motion for new trial, a deferential rather than *de novo* standard applies to our review of a trial court's determination of historical facts when that determination is based . . . solely upon affidavits regardless of whether the affidavits are controverted." *Holden*, 201 S.W.3d at 763.

### b. A hearing was held

The record shows that appellant was found guilty of capital murder on January 25, 2018. On February 22, 2018, appellant (*via* new counsel C. Lewis and A. O'Neill) filed a motion for new trial, including several affidavits (Herman Moreno, appellant's father; Arnold Esquivel, appellant's friend; Janie Hernandez, appellant's friend; Elmer Vasquez, appellant's cousin; and Christian Salgado, appellant's cousin) as well as other exhibits.

On March 28, 2018, the trial court ordered appellant's former counsel (C. Rodriguez and J. Romero) to file affidavits summarizing their actions in representing appellant; to respond to allegations of ineffective assistance claims in the motion for new trial; and to respond to other allegations contained in appellant's motion for new trial. C. Rodriguez and J. Romero filed affidavits on March 30, 2018.

On April 6, 2018, appellant filed a "letter brief in response to Mr. Romero and Mr. Rodriguez's affidavits regarding trial strategy and Dr. Rebecca Hamlin." Attached to the letter brief as Exhibit 1 was the affidavit of Michelle Forsten, office manager and head paralegal for C. Lewis' law office.

In their appellate brief, appellant claims that the trial court did not hold an evidentiary hearing on his motion for new trial; this assertion is belied by the

record. As set forth in the reporter's record, on April 9, 2018, the trial court conducted a hearing on appellant's motion for new trial. The trial court opened the hearing as follows:

> On the record in Cause Number 1473090 [sic], the State of Texas versus Daniel Moreno. The attorneys are present on the Motion for New Trial. The Court has been provided with the motion, affidavits, and the supplemental letter brief. So, at this time, having reviewed all of the affidavits, I'll entertain argument from both sides. And since it's their motion, I guess they get to go first.

Appellant's counsel was present at the hearing. The State offered into evidence the affidavits of C. Rodriguez and J. Romero, which were admitted without an objection from appellant's counsel. The trial court inquired if everything else was in the record, to which appellant's counsel responded affirmatively. Argument was heard by the court. Closing statements were made by the State and appellant's counsel. The trial court denied appellant's motion.

In his brief, appellant complains that the trial court allowed the prosecutor to secure responsive affidavits from appellant's former defense counsel instead of allowing an evidentiary hearing. "It has long been held that a trial court may decide a motion for new trial based on sworn pleadings and affidavits admitted in evidence without hearing oral testimony." *Holden*, 201 S.W.3d at 763. The record does not reflect that appellant's motion for new trial requested live testimony be heard. Likewise, appellant does not claim that there was testimony that the trial court prohibited. Moreover, appellant did not object during the hearing about the form of the evidence the court received—either by affidavit or live testimony—nor did he object in any manner to the introduction of evidence. He did not request a continuance to obtain any additional evidence. Thus, any complaint about the manner of the hearing was waived. Tex. R. App. P. 33.1.

7

For the first time on appeal, appellant contends the "trial court had no way of determining the merit of the claims without a hearing." We disagree. In this case, the affiants (appellant's father, cousins, friend) had already testified in the guilt-innocence phase of the trial, and the trial judge had already had an opportunity to evaluate the affiants. The court had received affidavits from appellant's former trial counsel and observed his representation throughout the trial. Finally, the trial judge was familiar with the history and facts of the case. Because the trial judge had sufficient information to determine the credibility of the affiants, we give deference to the trial court's resolution of the facts from conflicting affidavits. *Holden*, at 763–64 (citing *Manzi v. State*, 88 S.W.3d 240 (Tex. Crim. App. 2002)). Consequently, we cannot conclude that no reasonable view of the record could support the trial court's ruling. After ordering responsive affidavits be filed, holding an evidentiary hearing, and hearing oral arguments of the parties, we hold the trial court did not abuse its discretion in deciding the motion for new trial. *See id*. at 764.

### 2. Ineffective assistance of counsel

Next, appellant asserts his trial counsel acted deficiently as follows:

- Hired counsel J. Romero failed to appear for trial;

- Hired counsel J. Romero's associate C. Rodriguez refused to explain J. Romero's absence from the appellant's trial, other than to say that J. Romero was busy with other cases;

- Hired counsel J. Romero and his associate C. Rodriguez failed to use a peremptory strike against Juror 55 (who was the alternate but eventually deliberated with the jury) even after C. Rodriguez moved to strike her for cause for admitting she researched the appellant on the internet during *voir dire* and learned about his past criminal acts;

- Hired counsel J. Romero and his associate C. Rodriguez failed to visit the appellant in jail before trial in order to inform him of

8

their trial strategy or speak with him so that he could aid in his defense;

- Hired counsel J. Romero and his associate C. Rodriguez failed to investigate and prepare witnesses to testify in the appellant's case, including the appellant himself; and

- Hired counsel J. Romero and his associate C. Rodriguez failed to investigate, give notice of, subpoena, and call Dr. Rebecca Hamlin or another psychological expert witness.

### a. Standard of review

When, as here, the defendant raises ineffective assistance of counsel claims in a motion for new trial that is rejected by the trial court and reasserted on appeal, we analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden*, 201 S.W.3d at 763.

"In the absence of express findings, as here, we presume that the trial court made all findings in favor of the prevailing party." *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). We presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Colyer*, 428 S.W.3d at 122; *see also Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) (we should "impute implicit factual findings that support that trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported by the record.") (internal quotation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Riley v. State*, 378 S.W.3d 453, 456

(Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018).

The trial court is the sole judge of witness credibility at a hearing on a motion for new trial, whether presented through live testimony or affidavit. *Okonkwo*, 398 S.W.3d at 694. We defer to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Riley*, 378 S.W.3d at 458.

To show that the trial court abused its discretion in denying appellant's motion for new trial based on ineffective assistance of counsel, the record must reflect that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State,* 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Appellant has the burden to establish his claim by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697. "We review *de novo* the trial court's decision on the [*Strickland*] prejudice prong while giving deference to the trial court's implied resolution of the underlying factual determinations supporting denial of the motion. . . ." *Straight v. State*, 515 S.W.3d 553, 564 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

To establish the first prong, deficient performance, appellant must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex.

Crim. App. 2013) (quoting *Strickland*, 466 U.S. at 688); *see also Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011).

To prove harm, appellant "must demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ex parte Moore*, 395 S.W.3d at 158 (footnote omitted) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the proceeding]." *Id*. at 158 n.3 (quoting *Strickland*, 466 U.S. at 694).

Additionally, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *accord Burgess v. State*, 448 S.W.3d 589, 602 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813. Therefore, appellant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

Appellate courts view matters "from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *see also Ex parte Overton*, 444 S.W.3d 632, 640 (Tex. Crim. App. 2014). We consider the totality of the representation, not counsel's isolated acts or omissions. *Ex parte Jimenez*, 364 S.W.3d at 883. The mere fact that another attorney might have pursued a different tactic does not demonstrate ineffectiveness. *Id*. The appellant bears the burden to demonstrate that no

11

plausible reason exists for an act or omission. *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

### b.      Failure to meet first prong of *Strickland*

### ii.      Failure of attorney Joe Romero to appear and try the case instead of Carlos Rodriguez

Appellant's first two claims relate to appellant's contention that his family hired J. Romero to try his case and C. Rodriguez tried appellant's case instead of J. Romero. Appellant's father attests that he hired only J. Romero.[4] The affidavits of J. Romero and C. Rodriguez indicate that appellant's father hired the firm "Romero & Associates" in which C. Rodriguez was the primary attorney that practiced criminal law, and that C. Rodriguez was "in charge of the case from the beginning." As the fact finder, the trial court was entitled to believe the affidavits of J. Romero and C. Rodriguez, including any portion that conflicted with affidavits presented by appellant. *See Odelugo v. State*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014).

### iii.      Failure to peremptorily strike juror 55 and object to juror 55 replacing juror 27

Appellant's third claim is two part: trial counsel failed to peremptorily strike juror 55 and failed to object to juror 55 replacing dismissed juror 27. Appellant did not present this complaint to the trial court in his motion for new trial.[5] As such, the trial court's order for trial counsel to respond by affidavit did not include this allegation. Because this claim was not presented to the trial court, the trial court could not and did not abuse its discretion, in not finding the alleged

---

[4] Initially, appellant was represented by attorney C. Lewis. In or around January 2017, appellant's father substituted counsel by hiring Romero & Associates. After appellant was convicted, he substituted counsel again, rehiring C. Lewis.

[5] Appellant's motion for new trial presented five allegations of ineffective assistance. Appellant's brief has six.

deficient performance regarding juror 55 presented grounds for a new trial. *C.f.,*
*State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007) (for motion for new
trial, trial court may not consider grounds not properly presented).

Even viewing this assertion—the failure to peremptorily strike juror 55—as
a direct ineffective assistance of counsel claim instead of the denial of the motion
for new trial, the record is silent on this issue. Although trial counsel did seek to
strike juror 55 for cause,[6] his consideration of juror 59, whom he ultimately struck,
is absent from the record. "Nothing in the record proves that counsel's *voir dire*
was the product of an unreasoned or unreasonable strategy, or that there was a fair
probability that it led to either an unreliable guilty verdict or unjust punishment."
*Bone v. State*, 77 S.W.3d 828, 834 (Tex. Crim. App. 2002). Thus, appellant has
not met his burden of showing that trial counsel's performance was deficient. *Id*.
(citing *Jackson v. State*, 877 S.W.2d 768, 769–71 (Tex. Crim. App. 1994) (defense
counsel's failure to strike venireman who had been victim of crime and who stated
that he could not be fair did not establish ineffective assistance of counsel when
record did not reveal reasons for counsel's decision); *Delrio v. State*, 840 S.W.2d
443, 446–47 (Tex. Crim. App. 1992) (defense counsel's failure to strike venireman
who was former narcotics officer and knew defendant "by virtue of that
employment," did not establish ineffective assistance of counsel when record was
insufficient to overcome presumption of competence).

Likewise, the record also does not reflect trial counsel's strategy in agreeing
to replace juror 27 with juror 55. The record does reveal, however, that before
closing arguments juror 27 had contacted the bailiff expressing fear that appellant's

---

[6] Juror 55 alerted the bailiff that other potential jurors had sought outside information
about appellant's case. Juror 55 twice stated that she would not be influenced by any outside
information she overheard. Juror 59 was the potential alternate juror that trial counsel ultimately
struck.

13

witnesses—whom she believed were gang members—were going to do her harm. The juror appeared before the trial court and agreed she could be fair in her deliberations; however, the trial judge expressed concern regarding the bailiff's comments on the case to the juror and dismissed juror 27. The trial court has discretion to determine whether a juror has become disabled and to seat an alternate juror. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012); *see Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003).

Trial counsel was not ineffective in not using a peremptory strike on juror 55 and was not ineffective for agreeing to replace juror 27 with juror 55.

### iv. Failure to investigate and prepare witnesses, including appellant, and to inform appellant of trial strategy

In appellant's fourth and fifth issues, appellant maintains his trial counsel was deficient because they failed to: investigate the facts of appellant's case, prepare witnesses to testify at trial, and to confer with appellant to prepare a defense.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Salinas v. State*, 274 S.W.3d 256, 261 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). "A particular decision not to investigate must be directly assessed for reasonableness under all the relevant circumstances, allotting great deference to counsel's judgments." *Id*. Error in strategy "will be considered inadequate only if counsel's actions lack any plausible basis." *Kesaria v. State,* 148 S.W.3d 634, 638 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006).

Here, the adequacy of trial counsel's investigation into appellant's case was addressed in their affidavits. With regard to appellant's preparation, the trial court was presented two different accounts of the preparation of the case; an account by appellant's father, based entirely on appellant's out-of-court statements to the father, and an account given by both J. Romero and C. Rodriguez regarding the extent of efforts they undertook to prepare appellant, both while in custody and not in custody, and both before trial and during trial. Appellant's claims on the matter, essentially, rest entirely on the affidavit of appellant's father. The trial court was entitled to credit J. Romero and C. Rodriguez' affidavits on this matter and discount any allegations to the contrary. *See Odelugo*, 443 S.W.3d at 137. Appellant has not proven that C. Rodriguez, or even J. Romero, acted deficiently. Similarly, regarding appellant's claims of inadequate preparation of other witnesses, the trial court was free to discount the affidavits of appellant's witnesses claiming that they were underprepared. The trial court was free to find the affidavits of C. Rodriguez and J. Romero credible. As revealed by the record, the testimony of each witness was direct and targeted the particular information that each witness had to contribute. By the end of the presentation of all of the witnesses, the defense had clearly shown the propensity J. Vazquez had for violence. Appellant does not identify any particular evidence that was not presented that would have been discovered or presented through additional investigation and preparation. Under these circumstances, the trial court did not err in denying appellant's motion for new trial based on trial counsel's alleged failure to investigate and prepare witnesses for trial.

In sum, the record reflects that appellant's trial counsel reviewed the facts of the case, discussed options with appellant, and made strategic decisions regarding witnesses. "It is axiomatic that appellant's constitutional right to counsel does not

15

mean errorless counsel where competency or adequacy of representation is argued or judged purely by hindsight." *Holland v. State*, 761 S.W.2d at 320 (Tex. Crim. App. 1988). The fact that another attorney may have acted in a different manner is not sufficient to prove ineffective assistance. *Kesaria*, 148 S.W.3d at 638. Further, any error in trial strategy rises to the level of ineffective assistance only when counsel's actions lack any plausible basis. *Id*. Although in hindsight, appellant's trial counsel may have made strategic decisions that did not work entirely in appellant's favor, we cannot say these decisions lacked any plausible basis or resulted from an inadequate investigation into the facts of appellant's case.

### v. Failure to call psychological expert witnesses

In his final claim, appellant asserts that his trial counsel was ineffective for failing to investigate, give notice of, subpoena, and call Dr. Rebecca Hamlin or another psychological expert. Although appellant makes several arguments premised on the existence of, and conclusions contained in, an alleged report by Dr. Hamlin, appellant does not cite to where this report is located in the record. Arguments to support contentions made must contain cites to the record. Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record). Appellant did not provide cites to the record. Indeed, appellant's appendices and the record are completely devoid of the report.[7] Consequently, this court cannot consider the merits of appellant's claim regarding Dr. Hamlin and, more importantly, the trial court could not have considered appellant's claim either. Consequently, appellant has waived this issue. *See* Tex. R. App. P. 38.1(i); *Thompson*, 9 S.W.3d at 813 ("Any allegation of ineffectiveness must be firmly

---

[7] In their affidavits, trial counsel assert that, though the file was full of references and documents relating to Dr. Hamlin, they never received the report itself. This conflicts with the affidavit of C. Lewis' head paralegal in which she claims she turned it over with the file.

founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness"). Under these circumstances, we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial on the basis of ineffective assistance of counsel.

We therefore overrule appellant's first issue.

## B. Duress

In his second issue, appellant lodges two arguments. First, appellant contends that the trial court abused its discretion in refusing to admit specific-act character evidence regarding appellant's co-defendant, J. Vazquez. Next, appellants contends the trial court erred in refusing an instruction on the affirmative defense of duress.

### 1. Denial of admission of evidence

#### a. Standard of review

We review a trial court's determination of admissibility of evidence under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing *Montgomery v. State*, 810 S.W.2d 372, 386–88 (Tex. Crim. App. 1990) (op. on reh'g)). Reviewing courts are to give trial court judges "considerable latitude with regard to evidentiary issues," and, "[d]ifferent judges may reach different conclusions in different trials on substantially similar facts without abusing their discretion. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). The leeway afforded to trial courts in their evidentiary rulings means that, "[a]s long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). A reviewing court will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling.

*Fowler*, 553 S.W.3d at 582; *Devoe*, 354 S.W.3d at 469. An appellate court would misapply the appellate abuse of discretion standard of review by reversing a trial court's admissibility decision solely because the appellate court disagreed with it." *Powell*, 63 S.W.3d at 438 (citing *Montgomery*, 810 S.W.2d at 391).

### b. Exclusion of specific-act character evidence

Appellant asserts the trial court erred in denying appellant's request to put on specific-act character evidence about the relationship between appellant and his co-defendant to prove duress. The State contends appellant failed to properly preserve error for review.

In order to preserve for review an evidentiary ruling that excludes evidence, the ruling must "[affect] the substantial rights of the party," and, the party must inform "the court of the substance by offer of proof, unless the substance was apparent from the context." Tex. R. Evid. 103(a)(2); *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). An offer of proof based on counsel's statements—as opposed to interrogation of a witness—"must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent." *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). "The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence." *Id.* (internal citation omitted).

Here, during the testimony of witness E. Vasquez, appellant's trial counsel attempted to elicit testimony regarding instances that E. Vasquez saw of "Jonathan [co-defendant] taking advantage of Daniel [appellant] in the past, even at times by using threatening language or actions." Appellant did not present any specific instance for the trial court to consider. Appellant's affidavits do not present any

18

specific instances. Instead, appellant indicated that he was "trying to keep it to just general character in that respect regarding, you know, the defense of duress." Because the record reveals that appellant proffered nothing that rises to the level contemplated in our Rules of Evidence and governing law, appellant failed to properly preserve this issue for review. *See Mays v. State*, 285 S.W.3d 884, 891 (Tex. Crim. App. 2009) ("this sort of summary, in the most general and cursory terms, without any of the meat of the actual evidence, will not suffice to preserve error").

Notwithstanding appellant's failure to properly preserve this issue for review, the trial court did not abuse its discretion in excluding specific-act character evidence because appellant's counsel stated that he intended to offer the instances for "just general character." Testimony about specific acts of a third party for conformity purposes is prohibited by the rules of evidence. *See* Tex. R. Evid. 404(b)(1). Appellant did not offer evidence of previous instances for conformity under an exception to the rule.

Appellant's issue is overruled.

### 2.     Denial of jury instruction on duress

In his last issue, appellant argues that the trial court erred in denying his request for a jury instruction on duress. The State argues the trial court properly omitted an instruction on duress as there was insufficient evidence to support it, and it never became applicable. The State also maintains that appellant did not admit to the charged conduct.

### a.     Standard of review

In reviewing alleged jury charge error, appellate courts engage in a two-step process. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Kirsch v.*

*State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether there was error in the charge. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649. Second, if we find there was error in the charge, we must then determine whether sufficient harm resulted from the error to require reversal. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649

### b.  Not entitled to duress instruction

The affirmative defense of duress requires the defendant to have engaged in the conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. Tex. Penal Code § 8.05(a). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id*. § 8.05(c). The affirmative defense of duress is not available if the actor "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." *Id*. § 8.05(d).

A defendant must present evidence of a "threat of imminent death or serious bodily injury to himself or another." Tex. Penal Code § 8.05(a). A "threat" is "imminent" when, "[f]irst, the person making the threat must intend and be prepared to carry out the threat immediately" and, "[s]econd, carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately." *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Dupuis v. State*, No. 14-03-01171-CR, 2005 WL 1355530, at *3 (Tex. App.—Houston [14th Dist.] June 09, 2005, pet. ref'd) (mem. op., not designated for publication). The threat must be a "present threat." *Kessler v. State*, 850 S.W.2d 217, 222 (Tex. App.—Fort Worth 1993, no pet.) (for duress claim, threat "must be a present threat"); *c.f., Devine v. State*, 786

S.W.2d 268, 270 (Tex. Crim. App. 1989) (for offense of robbery, "imminent threat" requires a present threat).

Courts have recognized that duress is, on its face, a confession-and-avoidance or "justification" type of affirmative defense. *See, e.g., Farmer v. State*, 411 S.W.3d 901, 917 (Tex. Crim. App. 2013); *Gomez v. State*, 380 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Rodriguez v. State*, 368 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). It is in the nature of a confession-and-avoidance defense because "this justification, by definition, does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct." *Gomez*, 380 S.W.3d at 834 (citing *Juarez v. State*, 308 S.W.3d 398, 401–03 (Tex. Crim. App. 2010) (defining defense of necessity as confession-and-avoidance or "justification" defense); *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (defining Good Samaritan defense as confession-and-avoidance or "justification" defense)).

The confession-and-avoidance doctrine requires a defendant first to admit he engaged in the prohibited conduct by admitting to all elements of the underlying offense, including the applicable mental state, and then to claim his commission of the offense was justified because of other facts. *Gomez*, 380 S.W.3d at 834. With regard to duress specifically, "the other facts" must show the defendant acted out of fear due to a threat of imminent death or serious bodily injury. *See* Tex. Penal Code § 8.05(a).

A defendant cannot establish his action was justified without first identifying, or admitting to the commission of, the predicate act. *Gomez*, 380 S.W.3d at 834. If the defendant fails to testify, stipulate, or otherwise offer evidence admitting he engaged in the prohibited conduct, he is denied the benefit of the defense of duress. *Id.* (citing *Shaw*, 243 S.W.3d at 659) (defendant is

entitled to jury instruction on such defense only "when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct" (emphasis omitted)). In other words, when the defensive evidence merely attempts to negate an element of the offense, the defendant is not entitled to a defensive instruction on any defense subject to the confession-and-avoidance doctrine. *Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013).

In this case, the trial court properly omitted an instruction on duress because appellant did not present evidence of an objective reasonable threat that formed the basis of duress. Despite several witness' testimonies regarding the violent character of J. Vazquez, the only person who would have had personal knowledge about whether J. Vazquez made a threat was appellant. Appellant never testified that J. Vazquez threatened him or otherwise forced him through the use or exhibition of force to rob and kill the complainant. According to appellant, the only communication that J. Vazquez had with appellant was when J. Vazquez told appellant that they were "going to scare someone out of [J. Vazquez'] stuff." J. Vazquez never threatened appellant verbally or non-verbally. Appellant claimed that a "threat" was "implied" by J. Vazquez' "aggressiveness." An implied threat does not create an "objective, reasonable basis" for a claim of duress, even when a defendant claims that he or she is generally afraid of his or her co-actor. *See Cameron,* 925 S.W.2d at 250 (defendant's claim that he was "generally afraid of [his co-actor's] temper" was insufficient without an objective threat to the defendant to raise a claim of duress); *see also Bernal v. State*, 647 S.W.2d 699, 706 (Tex. App.—San Antonio 1982, no pet.) (claim that defendant feared co-actor "might get violent" if he did not "take his turn" in sexual assault was insufficient to establish an objective, reasonable basis for duress).

22

In his brief, appellant claims that because J. Vazquez had a firearm on his lap—which happened to be pointed at appellant—J. Vazquez implied a threat to appellant. This is insufficient under either element of "imminent threat." *See Anguish*, 991 S.W.2d at 886. Appellant's testimony was insufficient to show that J. Vazquez did "intend and [was] prepared to carry out the threat immediately," or that the subjective implied threat was "predicated upon the threatened person's failure to commit the charged offense immediately." *Id*. Appellant also claims that J. Vazquez was "yelling commands" as appellant "participated in the offense." This, too, was insufficient to prove duress as none of the alleged commands were threats. *See Cameron*, 925 S.W.2d at 250 ("the fact that a defendant is taking orders from another, however, is not sufficient to raise the defense of duress"). Appellant further admitted that, despite J. Vazquez' implied threat, and appellant's own fear, that he "could have just left" before the commission of the offense. Appellant's admission that he could have left indicated that he was not under duress. Tex. Penal Code § 8.05 ("Compulsion [for duress] exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure"). By indicating that he could have left if he wanted to, appellant not only revealed that there was no actual threat but showed that he was capable of resisting whatever pressure J. Vazquez exerted, but chose not to.

Additionally, appellant refused to admit that he committed capital murder. Appellant admitted that he was a "participant." However, it was clear throughout the rest of his testimony that he tried to negate certain elements of the offense. When asked if he committed or attempted to commit the predicate felony—robbery—to the capital murder, appellant steadfastly denied that he did.

Q: And y'all committed a robbery by taking that man's weapon?
A: I didn't commit the robbery but – no.

23

Q:  You didn't commit the robbery?

A:  No, ma'am.

Q:  Did you want to?

A:  No, ma'am.

Q:  Did you attempt to go in that trunk and get the shotgun?

A:  I just – I just went –

Q:  "yes" or "no," Mr. Moreno?

A:  No.

According to Appellant, he did not intend to steal any items, but thought that he and J. Vazquez were going to retrieve J. Vazquez' property. Appellant further claimed that he did not intend to kill the complainant, and that he pulled the trigger because he was "startled"—*i.e.*, that the shot he fired was reflexive. Appellant's claim of duress was defeated by his denial of the element of robbery and the denial of his specific intent to kill the complainant. *See Juarez*, 308 S.W.3d at 404 (confession and avoidance is only satisfied by "an admission to the conduct, which includes both the act or omission and the requisite mental state").

Because the evidence never raised the affirmative defense of duress, we conclude the trial court did not err in excluding such an instruction. We overrule appellant's second issue.

### III.   Conclusion

The judgment of the trial court is affirmed.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Christopher, Hassan, and Poissant.
Do Not Publish—Tex. R. App. P. 47.2(b).