**Opinion issued March 14, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00115-CR

———————————

## MARTIN EDUARDO VILLANUEVA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 177th District Court
Harris County, Texas
Trial Court Case No. 1513900

## O P I N I O N

A jury convicted appellant, Martin Eduardo Villanueva, of aggravated robbery, found two felony enhancement allegations true, and assessed punishment at 25 years' confinement. In two issues on appeal, appellant contends that the trial court erred in admitting out-of-court witness statements in violation of (1)

appellant's Sixth Amendment right to confrontation and (2) the prohibition against hearsay. We affirm.

## BACKGROUND

On the evening of June 15, 2016, Metro Police Officers Valderas and Jackson were dispatched to the Memorial Hermann Hospital/Houston Zoo light rail stop in response to a complaint that a man was loitering. Upon arrival, the officers approached 72-year-old William Gatewood, whom they believed at the time was the loiterer. When Valderas approached Gatewood to ask him to leave the platform, Gatewood "seemed like he was—he didn't really—he didn't really make a lot of sense" and his words were "mumbled." The officers noticed that Gatewood was bleeding from the mouth and that his walker was broken.

Latasha King-Jenkins approached the officers and, without questioning from the officers, told them that she had seen someone strike Gatewood multiple times, pull him out of his walker, and steal his wallet. Valderas testified that King-Jenkins "appeared anxious and nervous, like . . . she had witnessed something that had happened." King-Jenkins pointed to appellant, who was near the platform; appellant was wearing a white shirt and dark colored pants. As police approached him, appellant ignored their commands to stop and began to walk away. Valderas saw appellant drop a black object in a weeded area. Valderas detained appellant and retrieved the item appellant had dropped, which was Gatewood's wallet.

2

Metro Police obtained video footage of the attack at the platform, which showed that police arrived approximately nine minutes after the attack. The video shows a man in a white shirt and dark pants striking Gatewood and taking his wallet. Officer Valderas identified appellant as the man she arrested that night and as the person she saw on the video attacking Gatewood. Valderas also identified screenshots from the video as appellant, stating that she recognized him from having arrested him that night.

King-Jenkins did not testify at trial, but the statements that she made to officers that night were admitted into evidence through Valderas's testimony. Appellant objected to the admission of King-Jenkins's out-of-court statements, arguing that they were admitted in violation of the Confrontation Clause and the prohibition against hearsay. The trial court overruled appellant's objections, King-Jenkins's out-of-court statements were admitted at trial, and a jury convicted appellant of aggravated robbery of an elderly person. This appeal followed.

## RIGHT TO CONFRONTATION

In his first issue, appellant contends that the trial court erred by admitting King-Jenkins's out-of-court statements in violation of his right to confront his accusers as provided in the Confrontation Clause of the United States Constitution. Specifically, his objection is to King-Jenkins's statement that she saw a man punch Gatewood repeatedly and take his wallet, her description of the assailant as

wearing a white shirt and dark pants, and her pointing to appellant and identifying him as the assailant.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Cross-examination has been described as "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 J. Wigmore, Evidence § 1367 (Chadbourne rev. 1970). The Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable to testify and the defendant has had a prior opportunity for cross-examination. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). However, only testimonial statements cause the declarant to be a witness within the meaning of the Confrontation Clause. *Id.* Therefore, nontestimonial statements, "while subject to traditional limitations upon hearsay evidence, [are] not subject to the Confrontation Clause." *Id.* Whether a statement is testimonial or nontestimonial is a question of law that we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

In *Crawford*, the Supreme Court declined to provide "a comprehensive definition" of the term "testimonial," but stated that it applied "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial;

and to police interrogations." 541 U.S. at 68. The court further defined a core class of testimonial statements to include: (1) ex parte in-court testimony, (2) affidavits, (3) depositions, (4) confessions, (5) custodial examinations, and (6) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 51–52.

In *Davis*, the Supreme Court clarified the meaning of "testimonial" as follows:

> Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: *Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.*

547 U.S. at 822 (emphasis added).

Thus, the critical question before us in determining whether appellant's right to confrontation was violated is whether, objectively considered, King-Jenkins's statements made to police when they arrived at the scene are testimonial or nontestimonial in character.

In *Davis*, the Supreme Court considered the testimonial character of statements made during a call for emergency assistance, as well as statements

5

made to police officers who arrived at the scene of a reported domestic dispute. *See id.* at 826, 829–30. The Supreme Court noted that the complainant's statements made in response to an operator's questions during the call for emergency assistance concerned "events *as they were actually happening*," rather than past events and that "any reasonable listener would recognize" that the victim "was facing an ongoing emergency." *Id.* at 827. The Court further noted that "the nature of what was asked and answered" was "necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past." *Id.* Finally, the Supreme Court noted that the complainant's "frantic answers" were provided in an environment that was neither safe nor tranquil. *Id.* The Supreme Court held that these statements were nontestimonial because the circumstances of the emergency operator's interrogation "objectively indicate[d] its primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 828. In contrast, the Supreme Court held that the statements made by the complainant at the scene of the alleged domestic disturbance, which had also been preserved in an affidavit made by the complainant at the direction of the police officers, were testimonial. *Id.* at 830. The Court noted that these statements were made at a time when there appeared to be no emergency and after the assailant and the complainant had been separated. *Id.* Significantly, the court stated that, "[w]hen the officers first arrived, [the complainant] told them that things were fine . . . , and

there was no immediate threat to her person." *Id.* The Court concluded that the victim's statements, made only after the officers questioned her the "second time," "were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation." *Id.*

Finally, in *Michigan v. Bryant*, the Supreme Court discussed what would be considered an "ongoing emergency" resulting in nontestimonial evidence. 562 U.S. 344 (2011). Specifically, the Court considered the "ongoing emergency" circumstances in a new context: "a nondomestic dispute, involving a victim found in a public location, suffering from a fatal gunshot wound, and a perpetrator whose location was unknown at the time the police located the victim." *Id.* at 359. The Court noted that "[t]he existence of an ongoing emergency is relevant to determining the primary purpose of the interrogation because an emergency focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.'" *Id.* at 361 (quoting *Davis*, 547 U.S. at 822). "Rather, it focuses [the participants to the conversation] on 'end[ing] a threatening situation." *Id.* The *Bryant* court made clear that, for an ongoing emergency to exist, there need not be a continuing threat to the original victim, but instead there could be a continuing threat to the public, or even the police responding to the situation, after the initial threat to the first victim had been neutralized. *Id.* at 364. The *Bryant* court concluded that "[t]he questions [the police] asked—'what had

happened, who had shot him, and where the shooting occurred,'—were the exact type of questions necessary to allow the police to 'assess the situation, the threat to their own safety, and possible danger to the potential victim' and to the public." *Id.* at 376 (citations omitted).  As such, the Court concluded that "[t]he initial inquiries in this case resulted in the type of nontestimonial statements . . . contemplated in *Davis*." *Id.* at 377.

In addition, the following principles are useful in determining whether particular statements are testimonial: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Amador v. State*, 376 S.W.3d 339, 342–43 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Dixon v. State*, 244 S.W.3d 472, 482 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (*citing Ruth v. State*, 167 S.W.3d 560, 568–69 (Tex. App.—Houston [14th Dist.] 2005 pet. ref'd)).

With these principles in mind, we hold that King-Jenkins's statements to police were not testimonial in nature.  The statements were not solicited by police in response to questioning, but were spontaneously offered by King-Jenkins as soon as the police arrived to evaluate crime scene.  The statements were made

8

approximately nine minutes after the crime and at the same location as the crime. In fact, the victim was still bleeding at the scene of the crime, like the victim in *Bryant*. And again, as in *Bryant*, because the perpetrator had not been apprehended, there was still a risk of danger to the victim, to the police, and to the public. Indeed, the perpetrator was still at the scene of the crime and fled only when approached by police. *See also Spencer v. State*, 162 S.W.3d 877, 882 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding as nontestimonial statements made to police officers responding to call for emergency assistance during initial assessment and securing of crime scene).

Because the statements were nontestimonial, the trial court did not err in concluding that the Confrontation Clause was not violated. Accordingly, we overrule issue one.

## HEARSAY

In issue two, appellant contends that King-Jenkins's out-of-court statements were admitted in violation of the prohibition against hearsay found in Texas Rule of Evidence 801. The State responds that the statements are admissible as excited utterances under Texas Rule of Evidence 803(2).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. RULE 801(d). Hearsay is generally not admissible unless it fits one of

the exceptions provided in the Texas Rules of Evidence or other rule or statute. *Id.* 802. For the excited utterance exception to apply, three requirements must be shown: (1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous, (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. *See id.* 803(2); *Kesaria v. State*, 148 S.W.3d 634, 642 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006). The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Kesaria*, 148 S.W.3d at 641. An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

The critical determination regarding the excited utterance exception is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time he or she made the statement. *Tyler v. State*, 167 S.W.3d 550, 555 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We may consider the time elapsed between the event and the statement and whether the statement was in response to questioning, but these factors are not

10

necessarily dispositive. *Id.* Ultimately, we must determine whether the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *Id.*

Here, King-Jackson made the objected-to statements spontaneously and approximately nine minutes after witnessing the assault. *See, e.g., Jackson v. State*, 110 S.W.3d 626, 634 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding 15 to 20 minutes after aggravated assault with a deadly weapon was not too long for the excited utterance exception to apply). Indeed, the perpetrator, appellant, was still at the scene of the assault. Officer Valderas testified that King-Jackson "seemed anxious" and "nervous," "like she had just witnessed an event." In fact, the jury, too, was able to see King-Jackson's demeanor when it viewed the videotape from the incident and subsequent investigation and arrest. Under these circumstances, the trial court did not abuse its discretion in admitting the hearsay testimony under the excited utterance exception.

Furthermore, even if the trial court had committed error, such error would have been harmless. Under Texas Rule of Appellate Procedure 44.2(b), we must disregard non-constitutional error that does not affect a defendant's "substantial rights," i.e., if, upon examining the record as a whole, there is a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927

11

(Tex. Crim. App. 2004). The existence of substantial evidence in support of a verdict is a factor to consider in a harmless error analysis under Texas Rule of Appellate Procedure 44.2(b). *See Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).

Here, Officer Valderas testified that appellant was both (1) the person whom she arrested at the scene of the crime, who had been in possession of, and abandoned, Gatewood's wallet, and (2) the person seen on the videotape assaulting Gatewood. Also, appellant fled when approached by police. *See Valdes v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh'g) ("[W]hile flight along will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn."). Finally, the jury saw appellant at trial and could determine for itself, based on Valderas's testimony and its own viewing of the videotape of the assault, whether appellant was the perpetrator. In light of this other evidence, admission of King-Jenkins's statements did not affect appellant's substantial rights.

We overrule issue two.

## CONCLUSION

We affirm the trial court's judgment

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Publish. TEX. R. APP. P. 47.2(b).