**Opinion issued August 19, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-19-00731-CR

_____

**LEONARD KEITH DAWSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1434670**

---

## MEMORANDUM OPINION

A jury found appellant Leonard Keith Dawson ("Dawson") guilty of murder

and assessed his punishment at seventy-five years' confinement and a $5,000 fine.

In two issues, Dawson argues the trial court abused its discretion by admitting into

evidence (1) a photograph of Dawson holding a shotgun, and (2) statements made to police about a prior robbery involving Dawson.

We affirm the trial court's judgment.

**Background**

Julia Green ("Green") died from a gunshot wound to the back of her neck. The bullet, which was fired from a .38 revolver, entered below and behind her right ear, traveled downward, and exited the left side of her throat. Police found a .38 revolver laying on the bedroom floor near her body. The trajectory of the bullet through Green's neck and a bullet hole in the bedroom mattress suggest Green was face down on the mattress when someone shot her in the back of the neck.

Green's live-in boyfriend, Dawson, was arrested and charged with her murder. Although Dawson told the police and other witnesses at the scene that Green shot herself after he accused her of cheating on him, he later admitted that his suicide story was a lie and he testified to a completely different version of events at trial.

**A.    Testimony and Evidence During the Guilt-Phase**

Dawson, testifying in his own defense, testified that Green was on her knees praying in their bedroom. As she was praying, Dawson picked up a .38 revolver that he kept under his pillow for protection, cocked the hammer, and started twirling the loaded handgun around his finger. He testified he lost control of the gun and it "went off" while he was trying to catch it, striking Green in the neck. In an earlier statement

2

to police, Dawson stated he had been playing with the gun earlier the same day because he "just never really had like a gun" and he wanted to know how it worked.

On cross-examination, the State asked Dawson about his familiarity with firearms. When asked about his earlier statement to police that he had been playing with the .38 revolver because it was the first gun he owned, and he did not know how it worked, Dawson admitted that his earlier statement was a lie. He testified that before purchasing the .38 revolver, he owned a .22 rifle. Although police also found shotgun shells in his bedroom, Dawson denied ever owning a shotgun. He testified he kept shotgun shells in his bedroom because he "[j]ust wanted them to be there."

The State then moved to admit State's Exhibit 98, a photograph of Dawson holding a shotgun. The defense objected and argued that the photograph was irrelevant in part because Green was shot with a handgun, not a shotgun, and the photograph was more prejudicial than probative in violation of Texas Rule of Evidence 403. The State argued the photograph was relevant to show Dawson's "knowledge of how guns work and what he testified to are what he said in his statement; and what he's just testified to about this being an accident has opened up the door and made his knowledge of guns now relevant." The State also asserted that the photograph was relevant under Texas Rule of Evidence 404(b) to show "lack of mistake, which [Dawson] just testified and opened the door." The trial court

overruled the objections and admitted the photograph. When questioned about the photograph, Dawson testified that the shotgun depicted in the photograph belonged to his friend. Although he denied ever owning a shotgun, Dawson admitted that he liked the idea of a shotgun because it would scare people away.

The State then called Edwin Earl Green, Jr., Green's brother, as a rebuttal witness. Edwin Green testified he had served in the military for six years and had familiarity with several types of firearms. According to Edwin Green, Dawson had a "[b]ad habit of showing weapons." He testified he had seen Dawson on different occasions with a .38 revolver and a Mossberg 88, a shotgun Dawson and Green bought before Green's death. According to Edwin Green, Dawson was "holding [the shotgun] in front of me, addressing me to not come into his home."

The jury rejected Dawson's explanation for the shooting and convicted him of murder.

**B.      Testimony and Evidence During the Punishment-Phase**

During the punishment phase of Dawson's trial, the State introduced evidence of several prior extraneous bad acts by Dawson, including an armed robbery of a gas station and two misdemeanor convictions for possession of marijuana and burglary of a motor vehicle. The State also proved Dawson had sexually assaulted two women, fired a shotgun in an apartment complex, and assaulted the security officer who detained him after he fired the shotgun.

4

In connection with Dawson's prior robbery of a gas station, Muhammad Imran ("Imran") testified he had been robbed two or three times at different gas stations where he worked over a period of more than ten years, and he did not have a specific memory of the aggravated robbery in question. He did not identify Dawson as the robber. Imran testified that the standard protocol after an armed robbery required him to call his boss and his boss would tell him to call the police. Imran, however, could not recall whether he followed that protocol after the robbery involving Dawson.

Despite Imran's poor recollection, the State proved the offense through the testimony of the police officer who investigated the gas station robbery, and a DNA test from a belt the perpetrator used to tie up Imran during the robbery. The trial court overruled Dawson's hearsay objection and allowed Officer Leonard Gonzales ("Officer Gonzalez") to testify as to statements Imran made to him when he arrived at the scene.

Officer Gonzales testified he was dispatched to a gas station robbery in October 2013. When he arrived at the gas station, he spoke with the clerk, Imran, who appeared to be upset and shaken and claimed to feel sick to his stomach from the incident. Officer Gonzales testified that he asked Imran about the robbery and Imran gave his statement in a narrative format. Officer Gonzales testified that Imran told him he had been robbed at gunpoint while working at the gas station. A man,

5

whom Imran described to be about "five-foot five, dark skin, 150 pounds, and wearing a black hoodie," walked into the gas station, pointed a handgun at Imran and told him "Let's go." He made Imran get the money out of the register and give it to him. The robber then walked Imran to the restroom, tied his hands with a cloth belt and told him to wait in the restroom for ten minutes before coming out or else he would kill him. Imran told Officer Gonzales that he waited five minutes, but when he walked out of the restroom, he noticed the robber was still in the store. A few minutes later, Imran left the bathroom, noticed the robber was gone, and called the police.

Officer Gonzales testified that he spoke with Imran for about five minutes and that although Imran was visibly shaken the entire time, he began to calm down towards the end of their conversation. Officer Gonzales testified he collected the cloth belt the robber used to tie up Imran. Another witness testified that Dawson could not be excluded as a major contributor to a DNA sample taken from the belt. The jury assessed punishment at seventy-five years' confinement and a $5,000 fine.

## Admission of Evidence

In two issues, Dawson argues the trial court abused its discretion by admitting into evidence (1) the photograph of Dawson holding a shotgun, and (2) the statements Iman made to Officer Gonzalez.

6

## A.  Standard of Review and Applicable Law

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (stating trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree").

Generally, the erroneous admission of evidence constitutes non-constitutional error, subject to a harm analysis requiring reversal only if it affects the substantial rights of the accused. *See* Tex. R. App. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See id.*; *see also King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

**B.      Admissibility of Photograph**

In his first issue, Dawson argues the trial court abused its discretion by admitting into evidence a photograph of him shirtless holding a shotgun because the photograph is irrelevant, and the photograph's probative value is outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 401, 403. According to Dawson, the photograph was inflammatory, and it might have been improperly considered by the jury to support the State's theory that Dawson was dangerous and aggressive.

Assuming without deciding that the trial court abused its discretion by admitting into evidence a photograph of Dawson holding a shotgun, we conclude that any error was harmless because the same or similar evidence was admitted without objection through the testimony of Edwin Green. "It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978) (declining to consider admissibility of psychiatrist's opinion after psychologist gave similar opinion without objection); *see also Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.").

Edwin Green testified that Dawson had a "[b]ad habit of showing weapons" and that he had seen Dawson carrying a firearm more than once. He testified he saw

Dawson carrying a .38 revolver and that Dawson and Green had also recently bought a Mossberg 88 shotgun. Edwin Green testified that Dawson held the shotgun in front of him warning him to stay out of his home. *See Ford v. State*, 919 S.W.2d 107, 117–18 (Tex. Crim. App. 1996) (holding defendant waived error with respect to admission of photograph of him wearing dark coat because same information was admitted in another form without objection). This evidence was introduced without objection from Dawson, and therefore, evidence of Dawson's use and ownership of a shotgun was properly before the jury.

We overrule Dawson's first issue.

## C. Admissibility of Convenience Store Clerk's Statements to Police

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally not admissible unless it fits into one of the exceptions provided in the Texas Rules of Evidence or other rule or statute. *Id.* 802. The admissibility of an out-of-court statement under an applicable exception is within the trial court's discretion. *Kesaria v. State*, 148 S.W.3d 634, 641 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006). One such exception is the exited utterance exception.

An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R.

9

EVID. 803(2). The excited utterance exception stems from an assumption that the declarant is not then capable of the kind of reflection that would enable him to fabricate the information about which he speaks. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). The trustworthiness of the statement is founded on the fact that it is the event that speaks through the declarant and not the declarant relating the event. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

The excited utterance exception applies only when (1) the statement results from a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous, (2) the state of excitement dominates the declarant's mind such that there is no time or opportunity to contrive or misrepresent, and (3) the statement relates to the circumstances of the occurrence preceding it. *See Kesaria*, 148 S.W.3d at 642. "The critical determination regarding the excited utterance exception is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time he or she made the statement." *Villanueva v. State*, 576 S.W.3d 400, 406 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see also Tyler v. State*, 167 S.W.3d 550, 555 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Although we can consider the time lapse between the event and the statement and whether the statement was in response to questioning, these factors are not necessarily dispositive. *Villanueva*, 576 S.W.3d at 406. The question before us is "whether the statement was made

under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Id.*

Dawson postulates that a reasonable amount of time likely passed between the gas station robbery and when Imran gave his statement to Officer Gonzalez, because Imran had to call his boss prior to calling the police. Although Imran testified it was standard protocol to call his boss after an armed robbery before calling the police, there is no evidence that such call took place or how long the alleged conversation may have lasted. On the contrary, Officer Gonzales testified that Imran told him he called the police right after he left the restroom and noticed the robber was gone. There is also no evidence of how long it took Officer Gonzales to arrive at the gas station after Imran called the police.

We further note that the length of time between a startling occurrence and a challenged statement does not control whether the statement is an excited utterance. Thus, even if it had taken "a reasonable amount of time" for Officer Gonzales to arrive at the gas station, as Dawson suggests, the passage of time alone would not necessarily preclude the trial court from finding that Imran's statements satisfied the excited utterance exception. *See Apolinar*, 155 S.W.3d at 185 (statement made four days after exciting event admissible as excited utterance).

Similarly, the fact that Imran's statements were made in response to Officer Gonzales's questioning does not make the statements inadmissible under the excited

utterance exception; it is only a factor to consider. *See Villanueva*, 576 S.W.3d at 406. The key question is whether Imran was still dominated by the emotions, excitement, fear, or pain of the event when he gave his statements to Officer Gonzales. Officer Gonzales testified that Imran appeared nervous, upset, and visibly shaken when he arrived at the store and Imran, who complained that he felt sick to his stomach, remained in that agitated state during the five minutes he spoke to Officer Gonzalez about the robbery. This evidence supports the trial court's determination that Imran was still dominated by the emotions, fear, or pain of the armed robbery when he made his statements to Officer Gonzales.[1] *See Zuliani*, 97 S.W.3d at 595; *Villanueva*, 576 S.W.3d at 406.

Under these circumstances, we conclude the trial court did not abuse its discretion in admitting Imran's statements to Officer Gonzalez under the excited utterance exception. *See Campos v. State*, 186 S.W.3d 93, 99–100 (Tex. App.— Houston [1st Dist.] 2005, no pet.) (holding complainant's statements to police officers, made forty-three minutes after robbery, were admissible under excited utterance exception when statements were made in response to questioning and officers testified that complainant was crying, upset, and frightened).

We overrule Dawson's second issue.

---

[1] Although Officer Gonzales testified Imran began to calm down towards the end of their conversation, he testified that Imran was still upset and shaken during the time he relayed the events to him.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Goodman, Hightower, and Rivas-Molloy.

Do not publish. TEX. R. APP. PROC. 47.2(b).