

## NUMBER 13-23-00201-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**DENNIS ROY VERDINE,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 13
## OF BEXAR COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Benavides**

Appellant Dennis Roy Verdine was convicted of assault family violence, a class A misdemeanor, and sentenced to 120 days in county jail. *See* TEX. PENAL CODE ANN. § 22.01(a). By two issues, Verdine argues that the trial court erred by: (1) admitting 911 calls without allowing Verdine to cross-examine the caller, in violation of the Confrontation Clause, *see* U.S. CONST. amend VI; and (2) removing him from the courtroom during the

proceedings. We affirm.

## I.     911 CALLS[1]

By his first issue, Verdine argues that the trial court violated the Confrontation Clause by admitting two 911 calls made by the complainant. *See id.*

## A.     The Evidence

In total, three 911 calls were admitted into evidence.[2] The first call is approximately twenty-one seconds. Kim Cox, the complainant, provides her address and states, "I need the cops over here right now. He's trying to kill me [unintelligible]."[3] The operator asks whether the caller is still there, and the call disconnects.

The second call proceeded as follows:

| Cox: | Hello? |
|---|---|
| 911 operator: | San Antonio 911. |
| Cox: | I need the San Antonio Police Department. |
| | . . . . |
| | I was talking to them[,] and I had to hang up because my boyfriend . . . . He said he'll do it in front of all these people. I need it to—hurry. |
| 911 operator: | How long ago did you call? |
| Cox: | Uh, three minutes. He was trying to come in and get me[,] so I had to hang up. He's trying to take my phone. |

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] We transcribe the calls to the extent necessary to dispose of this issue.

[3] Cox does not identify herself in this call. However, it is undisputed that she was the 911 caller in both the first and second calls.

|  |  |
|---|---|
|  | I need it. Hurry, please. |
| 911 operator: | Did you already give an address when you called the first time? |
| Cox: | Yes, yes, I did. Uh, he's in cabin 3-0-1, he drives a black Kia. My name is Kim Cox. C-O-X. . . . His name is Dennis Verdine. V-E-R-D-I-N-E. |
| 911 operator: | And you said he's trying to kill you? |
| Cox: | Kill me, ma'am. He doesn't care. Yes, he was beating on my head on the front porch and my neighbor saw it and I think the old man called the cops 'cause I asked him to. He said he don't care if the cops are here, he's gonna kill me and go to prison for it. Please help me. Hurry. |
| 911 operator: | Do you need EMS? |
| Cox: | Ma'am, I have had twenty strokes and brain surgery and I'm about to have another one. No, I don't, but I'm gonna need a morgue if you don't send somebody. This is my phone number . . . . He's got a phone. You want his number? |
| 911 operator: | Okay, so does Dennis have a—what—he has a weapon? |
| Cox: | No, no, he doesn't have a weapon. He doesn't need one. |
| 911 operator: | Okay, all right, we're gonna get someone out there to you. |
| Cox: | [Unintelligible], ma'am. 'Cause I know they're gonna be scared of him. . . . He's still at the cabin . . . . I see his car. I'm in the laundromat. His main objective in life is to get rid of me in front of the cops. He don't care, he said. He has a bad, bad temper. He's still there at the cabin. |
| 911 operator: | Okay, . . . but you're in the laundromat? |

3

| | |
|---|---|
| Cox: | Yeah, but he can come in. It's not far. |
| 911 operator: | Okay. |
| Cox: | All the neighbors are outside, but he doesn't care. . . . |
| 911 operator: | Okay, all right. So, I see someone else also did call. |
| Cox: | Yes, was it the man? I called a minute ago. But I had to hang up because it was—I thought he was trying to come in the laundromat again. But it was really another old man. . . . And I hung up. I don't live here, ma'am. I don't know anybody here. I don't—I can't leave, I don't have a car and I don't have any money. . . . Help me. |
| 911 operator: | Okay, we're going to get someone out there to you. So, you're in the laundry room and what are you wearing? |
| Cox: | I'm wearing short—uh, blue jean shorts. And . . . a maroon shirt—t-shirt. You can't miss me, I'm the—the woman that's, uh, disarrayed. And I'm sixty years old. . . . |
| 911 operator: | Are you white, black, or Hispanic? |
| Cox: | No. White, white, I'm sorry. . . . He is, too. . . . |
| 911 operator: | Okay, all right. We're going to get someone out there to you, but he has no weapons on him, correct? |
| Cox: | No, no, he doesn't own a weapon and he doesn't have one. . . . |
| 911 operator: | Is he intoxicated; do you know? |

Cox first provided an unintelligible response to this question and then gave more specific details about her whereabouts. The 911 operator assured Cox that officers were en route, and the call ended shortly thereafter. At trial, Cox was not called as a witness. The trial court admitted Cox's 911 calls over Verdine's objection.

In a third 911 call, a man informed the operator that "a gentleman attacked . . . two

4

women here. . . . approximately three minutes ago." He then tells the operator that one of the women was present with him and that the assailant had "one of the women inside the . . . building with him." Verdine does not take issue with the admission of this call.

**B.      Standard of Review & Applicable Law**

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "[T]he admission of a hearsay statement made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial, and the defendant lacked a prior opportunity for cross-examination." *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006).

Statements are non-testimonial, and thus, not subject to exclusion under the Confrontation Clause, "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "[B]ecause the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." *Michigan v. Bryant*, 562 U.S. 344, 361 (2011). We consider a non-exhaustive list of factors in determining whether the primary purpose of an interrogation is to address an ongoing emergency:

(1)      whether the situation was still in progress;

(2)      whether the questions sought to determine what was currently happening rather than what happened in the past;

5

(3)    whether the primary purpose of the questions was to render aid rather than to memorialize a crime;

(4)    whether the questioning was conducted in a separate room, away from the appellant; and

(5)    whether the events were deliberately recounted in a step-by-step fashion.

*Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008). "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Bryant*, 562 U.S. at 358) (cleaned up). "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.*[,] whether a statement is testimonial or non-testimonial, *de novo*." *Wall*, 184 S.W.3d at 742.

## C.    Analysis

"We first examine the circumstances in which the interrogation occurred." *Bryant*, 562 U.S. at 371. Verdine argues that there was no ongoing emergency, as Cox declined medical help. "The victim's medical state . . . provides important context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public." *Id.* at 365. However, although a victim's medical state is relevant to our inquiry, an ongoing emergency can persist in the absence of a medical emergency. *See id.* ("*Davis* . . . did not present [a] medical emergenc[y], despite some injuries to the victim[]."); *Davis*, 547 U.S. at 832 (victim's statements to police were non-testimonial).

6

Here, Cox's statements were made in the context of a 911 call, rather than, for instance, a station interrogation. "A 911 call . . . and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establish or prove' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827 (cleaned up). As such, "[s]tatements made to police during contact initiated by a witness at the beginning of an investigation are generally not considered testimonial." *Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

"In addition to the circumstances in which an encounter occurs, the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." *Bryant*, 562 U.S. at 367. We first look to Cox's statements and actions. "[S]tatements made to police while the declarant (or another person) is still in personal danger are not made with consideration of their legal ramifications because the declarant usually speaks out of urgency and a desire to obtain a prompt response; thus, those statements will not normally be deemed testimonial." *Wall*, 184 S.W.3d at 742. Here, the circumstances surrounding Cox's calls indicate that a threat to her person persisted. Cox's tone was frantic throughout both calls. *See Davis*, 547 U.S. at 819 (victim's "frantic answers" during 911 call were non-testimonial). Additionally, many of Cox's statements were spontaneous, rather than in response to direct questioning by the 911 operator. *See, e.g.*, *Villanueva v. State*, 576 S.W.3d 400, 405 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) ("[S]pontaneous statements to the police are not testimonial . . . ."). The fact that she had to hang up in the first call because she thought

7

Verdine had found her further indicates that the emergency was very much still in progress.

Cox primarily spoke in the present or future tense, stating, "He's trying to kill me," and "I'm gonna need a morgue if you don't send somebody." *See Davis*, 547 U.S. at 831 (victim's "present-tense statements showed immediacy"). Although some of the information Cox volunteered concerned past events, the primary purpose of her call was clearly to obtain immediate help. *See Dixon v. State*, 244 S.W.3d 472, 484–85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that victim's statement that her "boyfriend just beat [her] up" was non-testimonial as "the primary purpose of [the] 9-1-1 call and her statements to the operator was to 'cry for help'" (citing *Davis*, 547 U.S. at 832)). And even though Verdine was not in the same room as Cox at the time the statements were made, a reasonable person in her shoes would fear that the threat could continue until he was apprehended. Thus, the emergency was ongoing. *See Vinson*, 252 S.W.3d at 340 (concluding that victim's identification of appellant as her assailant was non-testimonial as the police officer to whom the statement was made "was still assessing the situation and . . . until the appellant was secured, an emergency situation was ongoing"); *Villanueva*, 576 S.W.3d at 405; *see also Rendon v. State*, No. 04-16-00014-CR, 2017 WL 3722035, at *4 (Tex. App.—San Antonio Aug. 30, 2017, no pet.) (mem. op., not designated for publication) (concluding that statements were non-testimonial as, at the time, appellant "remained at large and constituted a continuing threat to the public and law enforcement"). Viewed objectively, Cox's call "was plainly a call for help against bona fide physical threat," not an attempt to establish or prove past facts for use in a

8

future prosecution. *See Davis*, 547 U.S. at 827; *see also Bryant*, 562 U.S. at 366.

The 911 operator asked Cox about her location, her appearance, whether Verdine had any weapons, and whether he was intoxicated. These questions were essential to assist officers in rendering aid and apprehending Verdine. *See Davis*, 547 U.S. at 832 ("We have already observed of domestic disputes that '[o]fficers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.'" (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 186 (2004))). Further, the informality of the call indicates that the 911 operator's "primary purpose was simply to address what they perceived to be an ongoing emergency, and the circumstances lacked any formality that would have alerted [Cox] to or focused [her] on the possible future prosecutorial use of [her] statements." *See Bryant*, 562 U.S. at 377 (describing a "harried 911 call" as "informal"); *cf. Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (testimonial statements are "formal and similar to trial testimony").

Based on an objective view of the circumstances in which the 911 calls were made, the primary purpose of the statements made therein was to address an ongoing emergency, not to "create an out-of-court substitute for trial testimony." *See Clark*, 576 U.S. at 245. Therefore, their admission was not violative of the Confrontation Clause. *See Davis*, 547 U.S. at 828. We overrule Verdine's first issue.

## II.     EXCLUSION FROM COURTROOM

By his second issue, Verdine argues that the trial court's decision to remove him from the courtroom violated his rights under the Sixth Amendment and the code of

9

criminal procedure. *See* U.S. Const. amend. VI; Tex. Code Crim. Proc. Ann. art. 28.01, § 1.

## A.    Standard of Review & Applicable Law

"One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). However, this right "may be lost by consent or at times even by misconduct." *Id.* at 342–43 (citing *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934)). Further, the constitutional "right to be present is triggered [only] when the proceedings bear a substantial relationship to the opportunity to defend." *Routier v. State*, 112 S.W.3d 554, 576 (Tex. Crim. App. 2003). An appellant is harmed by this type of error "unless after reviewing the record, the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Id.* at 577; *see* Tex. R. App. P. 44.2(a).

Under Texas's statutory scheme, "a defendant's right to be present is unwaivable prior to jury selection." *Lira v. State*, 666 S.W.3d 498, 512 (Tex. Crim. App. 2023); *see* Tex. Code Crim. Proc. Ann. art. 28.01, § 1. "A violation of Article 28.01 is non-constitutional error subject to review under Texas Rule of Appellate Procedure 44.2(b)." *King v. State*, 666 S.W.3d 581, 585 (Tex. Crim. App. 2023). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Id.* at 585 (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

10

**B. Analysis**

Prior to jury selection, the trial court removed Verdine from the courtroom. The following exchange took place outside of Verdine's presence:

| [Defense counsel]: | Okay. Can you give me some information on what my client was doing when he was looking at the Court? |
|---|---|
| THE COURT: | He was just glaring at me. He's just glaring at me. He's mad dogging me is the word they use on the street. |
| | . . . . |
| | For the record, Mr. Verdine did not like some redirection from the Court. He had an outburst. He is back in the holding cell. And we will keep him there while his attorney argues the pretrial motions. And we will bring him back in when the venire comes in for jury selection. |

In his absence, the trial court heard and granted Verdine's motion in limine. Verdine was then brought back into the courtroom and trial proceeded.

We conclude that any error in removing Verdine from the courtroom was harmless. In *King v. State*, the court of criminal appeals held that a defendant's absence from a hearing on a motion in limine, although error, was ultimately harmless under both the federal constitution and the code of criminal procedure. 666 S.W.3d at 586. As in *King*, "[t]his was a preliminary hearing. Nothing decided about the motion in limine was final. And the trial court granted the motion that was the subject of the hearing." *See id.* Further, "[t]here is no evidence that appellant had any information, not available to the attorneys or the court, regarding any of the matters discussed at the" hearing. *See Adanandus v. State*, 866 S.W.2d 210, 220 (Tex. Crim. App. 1993). "There is [also] no evidence that the

11

trial court might have ruled differently during the [hearing] had appellant been present and a supposition of that nature is unreasonable." *See id.* We conclude beyond a reasonable doubt that Verdine's absence from the hearing did not contribute to his conviction or punishment. *See id.* We further conclude that any error in excluding Verdine from the courtroom did not influence the jury in determining guilt or assessing a punishment. *See King*, 666 S.W.3d at 586.

We overrule Verdine's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
11th day of April, 2024.

12